Delaplaine vs. Cook.

GEORGE P. DELAPLAINE, Plaintiff in Error,

*vs.*

WILLIAM G. COOK, Defendant in Error.

ERROR TO DANE CIRCUIT COURT.

By section 109 of Chapter 15 of the Revised Statutes of 1849, a tax deed of lands sold for taxes and unredeemed, vests in the purchaser the fee simple of such land, and such deed duly executed and acknowledged is *prima facie* evidence of all the proceedings, from the valuation by the assessors inclusive, up to the execution of the deed.

But such deed, when duly executed and acknowledged, is only *prima facie* evidence of the regularity of the previous proceedings, and its legal presumptions may be rebutted by evidence on the part of the party attacking the deed.

In such case the *onus probandi* is on the party attacking the deed.

It is in the power of the legislature to impose or change the *onus probandi* on either party in proceedings in reference to tax deeds and proceedings in relation thereto.

This was an action of ejectment commenced in the usual form, before the code, for the recovery of lot 6, in block 43, and lots 7, 8, and 9, in block 52, in the village of Madison. The defence was, the general issue and title in the defendant, by virtue of tax deeds, and the statute of limitations.

On the trial, the plaintiff to establish his title produced a record from the office of the Register of Deeds, of a patent from the United States to James D. Doty and Stevens T, Mason, dated May 24, 1841; also, from volume 2, page 232, a record of a warranty deed from James D. Doty to Elijah M. Bissell, dated Dec. 2, 1836; also from the same volume page 79, a record of a warranty deed from Bissell to Orendorff, dated Dec. 3, 1836; also from volume 1, page 304, a record of a warranty deed from Orendorff to the plaintiff, dated July

11, 1840. The defendant then admitted that he was in possession of the premises, and thereupon the plaintiff, rested.

To maintain the defence the defendant offered in evidence several tax deeds, under which he claimed to derive title, ranging in date from 1847 to 1854, all of which were ruled out by the court below for informality, and for the reason as to the two deeds specially considered, that the defendant had not shown all the preliminary steps in the assessment, &c., prior to the deed, to have been regular. To this ruling the plaintiff excepted. The two deeds considered by the court as set out in the record will hereinafter appear. As in the opinion of this court the ruling of the court below determines the present case in error, they are given as offered. The other several exceptions taken to the ruling of the court below in reference to the questions presented on the trial, were not passed upon or considered, and for that reason are not stated in detail.

After having offered several other prior tax deeds through which the defendant claims title, and the same had been rejected by the court, the defendant offered the record of a deed as follows :

" To all to whom these presents shall come greeting : Whereas the treasurer for the county of Dane, State of Wisconsin, did on the twentieth day of April, in the year of our Lord one thousand eight hundred and forty-eight in pursuant to the law, sell to the treasurer of Dane County, lots two and seventeen in block six; lots six, seven, eight, and nine in block eight; lot eight in block twenty-eight; lots four, fifteen and seventeen in block thirty; lot eighteen in block thirty-one ; lot nine in block thirty-two ; lots eight and thirteen in block thirty-five ; lots eight and twelve in block thirty-nine, lots three and four in block forty ; lot two in block forty-four ; lots four and five in block forty-eight ; lot four in block forty-

nine, for the sum of six dollars and six cents. To D. A. J. Upham, lots seven, eight, and nine, in block fifty-two; for the sum of one dollar nineteen cents and four mills. To the Treasurer of Dane County, lot one in block fifty-three for the sum of thirty-five cents and two mills. To Simon Powers, lots two, three, four, five, fourteen, sixteen, seventeen, and eighteen in block fifty-three, for the sum of three dollars, sixteen cents, and two mills. To Simeon Mills, lot nine in block sixty-six, for the sum of sixty-nine cents and five mills. To George P. Delaplaine, lot seven in block seventy, for fifty-eight cents. To D. A. J. Upham, lot two in block ninty-two, for fifty-eight cents. To George P. Delaplaine, lots eleven and thirteen in block ninty-seven, for seventy cents and four mills.

To the Treasurer of Dane County, lot three in block ninty-eight, for fifty-eight cents. To George P. Delapline, lot two in block one hundred for ninty-two cents and three mills. To the Treasurer of Dane County, undivided one-half of lot number four in block one hundred and eight, for one dollar and fifty cents. To E. M. Williamson, lot two in block one hundred and twelve, for the sum of eighty cents and nine mills, and to George P. Delaplaine, lot sixty in block one hundred and thirty-seven for the sum of twenty-three cents and nine mills, (all of said lots and blocks being situated in the town plat of Madison, Dane county, State of Wisconsin,) being the amount of taxes and charges due the said county on the same for the year 1847, and did issue certificate of the sale thereof to the said purchaser; and whereas the time allowed by law for the redemption of said premises expired on the twentieth day of April one thousand eight hundred and fifty one, and whereas said premises have not been redeemed within the time limited by law, and in consequence thereof the said purchaser or his assigns have become entitled to a deed for the same from the proper officer and whereas it appears that George P. Delaplaine and Elisha Burdick, are

the lawful owners of said certificates. Now, therefore, Know all, men by these presents, that the county of Dane, by Sylvester Giles, clerk of the board of supervisors of the county aforesaid, and the said clerk in the name of the said county of Dane, as clerk of the board of supervisors, thereof in consideration of the premises above stated, and the further sum of eleven dollars and eighty cents fees for this deed and advertising, to him in hand paid, does give, grant, confirm, and convey unto the said George P. Delaplaine and Elisha Burdick, forever, all those certain pieces and parcels of land above described and not redeemed as aforesaid, together with all and singular the privileges and appurtenances thereunto belonging. To have and to hold the same with the privileges and appurtenances to the said George P. Delaplaine and Elisha Burdick, to their heirs and assigns forever. In testimony whereof, I, Sylvester Giles, the said clerk have hereunto set my hand and affixed the seal of the board of county supervisors of Dane county, at Madison, State of Wisconsin, this twenty-first day of April, in the year of our Lord one thousand eight hundred and fifty-one."

SYLVESTER GILES, [L. S.]

Clerk of the Board of Supervisors of Dane county, Wisconsin.

The second deed bore date April 17, 1852, and was in all essential respects similar to the former deed, and was founded upon the tax sale of 1849, covering the lands in dispute ; the defendants claiming title under the same.

The tax deed of 1854, under which the defendant claimed title was not materially unlike the other two, but it does not now enter into the case.

The exceptions taken to the ruling of the court below on the trial were numerous, and involve extensive record evidence for their consideration, which enter into and constitute a large portion of the briefs of the plaintiff in error.

After the evidence was closed, there were several instructions asked of the court, and either given or refused, of which those considered and determined, are stated in the opinion of the court.

*Knowlton, Knapp & Frink* for the plaintiff in error.

The court erred in ruling that the deeds mentioned in the sixteenth and seventeenth exceptions could not be read. These deeds are in all things in strict compliance with the statutes in force at the time of making of the same. The Rev. Stat. 162, Sec. 109, has provided that such a deed " shall be *prima facie* evidence of the regularity of all the proceedings from the valuation of the land by the assessor inclusive, up to the execution of the deed," but yet the court rejected this *prima facie* evidence, and as in the former case required all these facts to appear *aliunde,* before the deeds could be read.

We further contend that the court erred in ruling that the deed mentioned in the eighteenth exception could not be read nor that mentioned in the nineteenth exception received in evidence. These deeds are given under the provisions of the act of 1854, page 787, Sec. 1, Sess. Laws of 1854, which provides, " when any deed of land hereafter executed by any officers authorized by the laws of this State to execute deeds of lands sold for the non-payment of taxes shall contain a recital that the lands therein specified as conveyed have been sold, and said deed executed on account of the non-payment of any tax, such deeds shall be *conclusive* in all courts, that the proceedings have been regular, from the valuation of the lands up to the execution of the deed, and of the conditions precedent, in any way affecting the validity of said deed." This act it will be remembered was passed after the decision of the Supreme Court in the case of Bridges vs. Bracken, 3 Chand. 75, and its plain import is to over-rule that decision.

But the Legislature have gone still further, and in 1854,

(Gen. Acts, 78, Sec. 1 ;) provided that the holder of any certificate of sale, after the three years for the redemption thereof shall have expired, may perfect the title to the land described in such certificate, and sold for the non-payment of taxes and unredeemed, by filing the same with the officer authorized by law to execute deeds of land sold for the non-payment of taxes, who is hereby required to execute, acknowledge and deliver such deed as provided by law ; and when (which) recorded in the office of the register of deeds of the proper county, shall vest in the grantee therein, all right, title, interest and estate of the former owner or owners in fee simple in and to the lands so conveyed, and also all the right, title, interest and claim of the State and county thereto ; and the same shall be received as evidence with, and have in all other respects the force and effect in all courts, as is or may be given by law to such deeds executed in pursuance thereof ; *nor shall the title conveyed by any deed of lands sold for the non-payment of any tax or taxes to the grantee therein, his heirs or assigns be invalidated, or in any way affected or avoided by any error previously made in assessing, listing, taxing, selling or conveying said land, or in any other proceeding previous to the execution and delivery of such deed."*

The second section re-affirms the act of 1852, except as to the form of the tax deed, and, the third, fourth, fifth and sixth sections give a new form for the deed, which the officers have pursued in making the deeds now under consideration. And the law has declared that the same " shall be *conclusive* in all courts, that the proceedings have been regular from the valuation of the land up to the execution of the deed, and of the conditions precedent, in any way affecting the validity of said deed," and further that the title shall not " be invalidated, or in any way affected or avoided by any error previously made in assessing, listing, taxing, selling, or conveying said land, or in any other proceeding previous to the execution and

delivery of such deed." We cannot perceive how these deeds could be ruled out by the courts, after being made *conclusive* of these facts.

We consider that in the argument of the case thus far we have stated and discussed these propositions and maxims of law which applied to the fourth and fifth assignments of error, will be sufficient to reverse this case for those errors. These points are based upon the twentieth and twenty-first exceptions, and as no new point is made in them, except to present the old ones in another shape, they will not be further discussed.

And in conclusion we submit, that the legislature has the power to declare, what shall be evidence to establish the existence, in a court of justice, of a fact, or any number of facts, and that that body may also declare the weight, grade, force or effect of that evidence; otherwise how can the legislature declare that any document shall be *prima facie* evidence, or that a record shall be *conclusive* evidence ? There is no inhibition upon the exercise of these powers either in the State or national constitutions; and without such inhibition, the power of the legislature is complete, sovereign and supreme. The subject is one fit for the exercise of legislative power and discretion, to enable the sovereign power to support itself. That power has been exercised, and it only remains for the courts to say whether the will of the sovereign as expressed by enactments shall be carried out, and the government sustained, or judicially repealed and the government destroyed.

*Peter Yates*, for the defendent in error,

Contended that the two deeds of date 1851 and 1852 were inadmissible in evidence, for the reason that the party claiming title under them was bound to show affirmatively the regularity of all the proceedings of assessment, sale, &c., up to

and including the execution and delivery of the deed, and this not having been done, the deeds were not competent evidence.

*By the Court*, WHITON, C. J.  As we desire to hear many of the questions which were discussed by counsel further argued, before we finally pass upon them, and as we are satisfied that in one respect the ruling of the court below was incorrect, we have concluded to reverse the judgment in this case and award a new trial.  It will not be denied that many of the questions presented by this record are most important, not only to individuals, but to the State itself, which depends for its means to perform the functions of a government mainly upon the taxes which it annually levies upon the property of its citizens.  Nor will it be denied by any one conversant with the authorities, that they are entirely irreconcilable with each other as to the proper rule to be observed in the construction of our revenue laws, and the effect which ought to be given to tax deeds made under them.  When the government, through its ministerial officers or agents, attempts by the formality of a tax sale to divest a person of his estate, it is said to be but the dictate of common reason and natural justice to require that not only the course prescribed by law shall be strictly pursued, but also that the evidence that this has been done shall be furnished by the party who sets up a title acquired by such a sale.  In the exercise of its sovereign powers and acting in its own prescribed manner, the government executes the law, fixes its provisions, chooses the persons to execute it, and directs the path they shall follow, and it is insisted that while it is comparatively easy for the State or its agents to prove that certain things have been done, it is in many cases impossible for the owner, who has been deprived of his property, to prove that they have not been

done, however certain the fact may be. On the other hand it is insisted, if not with equal, yet certainly with great force of reason, that the necessities of government require an adequate and regular supply of revenue to keep up its efficient action, and that it is just that this public revenue be derived in proper proportions from all the taxable property in the State; that experience has shown that some enactments must be made for the purpose of securing the prompt payment of revenue, either by inducing owners of land to pay the taxes assessed upon them, or by inducing persons to attend sales for taxes and bid for the lands offered for sale; that the greater the certainty the purchaser will acquire a good title the less land he will take and pay the taxes; that the purchaser pays his money to the government in good faith, supposing the officers have done their duty, but that whether they have or not, it is almost impossible for him to know; and that to require him to show, in an action against him, that the preliminary proceedings of these officers in listing and assessing the land, in levying and collecting the tax, and in the advertisement and sale of the property have been in strict conformity to law, is equivalent to defeating his title altogether. These and similar considerations have manifestly had their influence upon courts in interpreting the various acts of the legislature relating to the levying and collection of taxes, and in deciding what effect should be given to tax deeds when offered in evidence.

On the trial of this case in the court below, the plaintiff in error, in order to defeat a recovery, among other things offered in evidence two tax deeds, made and executed by the clerk of the board of supervisors of Dane county, to the plaintiff in error and Elisha Burdick, one bearing date the 21st day of April, 1851, on lots 7, and 8, in block 52; the other bearing date the 17th day of April, 1852, on lot six, in block 43; these being the lots in controversy.

Delaplaine vs. Cook.

The defendant in error objected to the reading of these deeds in evidence, unless the party offering them should first show that all the proceedings by the taxing officer and collector, prior to the making the deeds, had been in all respects regular and according to law. The circuit court sustained the objection, holding that it was necessary for the plaintiff in error to show that 'every thing had been done which the statute makes essential to the validity of these tax deeds, this not being done, the deeds were excluded from the consideration of the jury. This ruling of the circuit court we deem erroneous.

Section 109 of chap. 15, R. S., 1849, in substance provides that when lands sold for taxes shall not be redeemed, the clerk of the board of supervisors of the county where the lands were sold, shall, after the expiration of the time prescribed by the law for the redemption thereof, on presentation to him of the certificate of sale, execute in the name of his county as clerk and under his hand and seal, to the purchaser, a deed of the land remaining unredeemed, and shall acknowledge the same, which deed shall vest in the grantee an absolute estate in fee simple in such lands; and the statute further declares that such deeds, duly witnessed and acknowledged, *shall be prima facie evidence of the regularity of all proceedings, from the valuation of the land by the assessors inclusive, up to the execution of the deed.*

The meaning of this statute is plain and obvious. It makes the tax deed prima facie evidence of the regularity of all proceedings from the valuation of the land up to the execution of the deed. The deeds offered in evidence were executed under this enactment, were duly witnessed and acknowledged, and if this provision of law is to have any force whatever, they should have been received. For to devolve upon the party offering the tax deed in evidence, still the necessity of showing that all the proceedings of the

officers prior to the making of the deed are regular and in strict conformity to law, is practically annulling this provision of the statute. By this law the deed is only made prima facie evidence that the officers in listing and assessing the land, levying and collecting the tax, and returning, advertising and selling the property, have proceeded according to the statute. This presumption may be repelled by the legal evidence offered by the party attacking the tax deed. But the *onus* rests upon him, and not upon the purchaser. So the statute declares. The power of the legislature thus to change the burden of proof cannot be doubted. Whether it is a wholesome rule of evidence, it is not for the courts to determine. They must yield obedience to the legislative will clearly expressed in a constitutional enactment.

It follows from the conclusions to which we have arrived that the circuit court improperly rejected the tax deeds above mentioned, and for that reason there must be a new trial.

Judgment of the circuit court is reversed, and a new trial ordered.