## LUMSDEN vs. CROSS.

: APPEAL FROM COUNTY COURT, MILWAUKEE COUNTY.

Heard October 27, 1859.]                    [Decided January 4, 1860.

### Assessments—Constitutional Law—Taxes.

The charter of the city of Milwaukee, which provides for assessing a special tax upon lots in the city to pay the expense of opening, grading, improving and paving the streets, and building sidewalks and cross walks in front of the same lots, is constitutional.

All taxes levied for the purpose of revenue, and for the support of the government, as well for the expenses of municipal corporations as for the state at large, must be levied in accordance with the uniform rule prescribed by sec. 1, Art. VIII, of the Constitution.

Taxes raised by the city of Milwaukee to pay the expense of opening, grading, paving, and improving the streets, and constructing suitable sidewalks and crosswalks, can, under the provisions of sec. 3, Art. XI, be assessed upon the lots in front of which the improvements is made, and not on the city at large.

The legislature has power to declare by law what shall be the effect of instruments made by public officers under sanction of law, such as tax lists, tax deeds, &c., when offered in evidence.

The cases of *Delaplaine vs. Cook*, 7 Wis., 44, and *Knowlton vs. Supervisors of Rock County*, 9 id., 410, considered and approved.

This action was commenced by Samuel and William Lumsden against James B. Cross, to recover the amount they had paid to redeem a lot in the city of Milwaukee which the defendant had allowed to be sold for taxes which he was bound to pay. The complaint set forth that they owned the lot and had leased it to Winthrop W. Gilman for a term of years, and he had leased one half the lot to Cross, who agreed to pay and discharge all taxes and assessment levied and assessed on the premises during the term of his lease, at the time the same should become due and payable, and before costs or penalty should accrue thereon by reason of the non-payment. That Gilman had assigned the lease to the plaintiffs. That Cross had not kept his contract and agreement, and did not pay the taxes and assessments, assessed and levied on the tract for the year 1855; that the lot had been sold

for the taxes, and they had been put to the expense of redeeming it, amounting to $140 18.

To this complaint the defendant answered, that the plaintiffs had paid but $8 59, and for that he offered to allow judgment to be entered.

2. That the pretended taxes and assessment of the city of Milwaukee, assessed and levied for the year 1854, and for which the same were sold, were levied and assessed for grading, improving and repairing the streets, sidewalks or alleys adjoining or in front of the lands, and that all moneys in the complaint alleged to have been paid by the plaintiffs, except the sum of $8 59, were paid for said pretended taxes and assessments, and for redeeming the lands from the pretended sale therefor, and not otherwise.

3. That said pretended taxes and assessments of the city of Milwaukee were levied and assessed upon the lands illegally and without due course or authority of law, and in contravention of the charter of the city of Milwaukee, and in violation of the constitution of the state of Wisconsin in such case made and provided, and that the same were and are illegal and void, and of no effect.

On the trial the plaintiffs proved the levy and sale of the lot for the tax, and that they had redeemed it by paying $131 34. The county judge instructed the jury that assessments could be constitutionally and legally made on lots fronting on the streets of the city, to defray the expense of repairing or making the streets in front of such lots, and in substance, that the provisions of the charter of the city of Milwaukee, in relation to grading, making and repairing streets, in force in 1854, were constitutional and valid.

The jury found for the plaintiffs, and judgment was entered accordingly. From which Cross has appealed to this court.

*Downer, La Due & Jenkins,* for the appellant.

*Nelson Cross,* for the respondent.

The counsel on each side relied upon the same authorities as in the cases of *Weeks vs. City of Milwaukee,* and *Clark vs. City of Janesville, supra;* and to which reference must be had.

*By the Court,* DIXON, C. J. It has been already decided in the case of *Knowlton vs. The Supervisors of Rock County,* 9

Wis., 410, that the uniform rule of taxation prescribed by the *first* section of the VIIIth Article of the constitution, extends to all taxes levied for the purpose of revenue, or the support of the government, whether the moneys were used in defraying the expenses of municipal corporations, such as towns, villages, cities and counties, or those of the state at large.   We are now called upon to determine whether this constitutional rule of uniformity extends to what are denominated "assessments" made by the corporate authorities of the city of Milwaukee, under the charter, for the purpose of opening, grading, paving and improving streets within that city, and supplying them with suitable side and crosswalks.   It was remarked in that case above referred to, that in the absence of any constitutional restrictions, legislative action upon the subject of taxation could seldom become a matter of judicial supervision or control.   When it was said however that every wholly independent government has authority to lay taxes in its discretion, the remark, when applied to a constitutional or republican government, is of course to be understood with the qualification, that they are to be imposed to subserve the legitimate ends of taxation, viz: *To defray public charges and expenses, and by* general or public laws equally binding on every member of the community within or for which they are levied.   There can be little doubt that these assessments or local impositions are public burthens or charges, and as such would be included within the general term taxation, and governed by the rule prescribed by the first section of the VIIIth Article, provided they are not withdrawn from the operation of that section by the 3d section of the XIth Article, which reads as follows : "It shall be the duty of the legislature, and they are hereby empowered to provide for the organization of cities and incorporated villages, and to *restrict* their power of taxation, *assessment,* borrowing money, contracting debts, and loaning their credit, *so as to prevent abuses in assessments* and taxa-

tion, and in contracting debts by such municipal corpora-
tions." Upon no other principle than that such assessments
are burdens and charges imposed by the legislative power,
upon property to raise money for public purposes, and are
therefore *taxation*, according to its well defined and legal ac-
ceptation, can they be sustained at all. The controversy, so
far as objections to the plaintiff's recovery, growing out of the
provisions of the constitution, are concerned, is therefore re-
duced to the simple question of the effect of the section last
quoted, upon a case like the present.

The constitution of Ohio, in relation to the general rule of
taxation, is in effect the same as our own. If there be any
difference, it is the more stringent of the two. It provides, 2d
section, XIIth Article, that "laws *shall* be passed taxing by a
uniform rule, all moneys, &c., and also all real and personal
property, according *to its true value* in money." In the case
of the *City of Zanesville vs. Richards*, 5 Ohio St. Rep., 589, the
supreme court held, that this section was applicable to, and
furnished the governing principle for all laws levying taxes
for general revenue, whether for state, county, township or
corporation purposes. The 6th section of the XIIIth Article,
is substantially the same as our section 3, Article II. It reads
thus: " The general assembly shall provide for the organiza-
tion of cities and incorporated villages by general laws; and
*restrict* their power of taxation, *assessment*, borrowing money,
contracting debts, and loaning their credit, *so as to prevent
the abuse of such power.*"

The case of *Hill vs. Higdon*, 5 Ohio State Rep., 243, cited
by the respondents counsel, was like the present in every fea-
ture and circumstance, so far as the constitutional question
was concerned. There the action was brought directly for
the amount assessed upon Hill, for the regrading and
paving of a street in the city of Cincinnati. The common
council had, by an ordinance, directed the regrading and

paving of that portion of the street upon which Hill's lot fronted, and that the expense should be paid by a tax on the adjoining lots in proportion to their frontage on the street, according to the provisions of an amendment of the charter, passed March 20th, 1850. Higdon did the work under a contract with the city, and Hill refusing to pay the amount assessed upon his lot, he brought suit against him. The main question in the case, to-wit, the constitutionality of the law, under the foregoing provisions of the constitution of that state, was raised by special demurrer to the declaration. The supreme court held the provisions of the charter, and the ordinance passed in pursuance of it, constitutional and valid. The reasoning of Chief Justice Ranney is so clear, forcible, and conclusive, and so directly applicable to the question under consideration, that I cannot forbear quoting it at some length, as a sound commentary upon the provisions of our own constitution. After adverting to the section of the constitution requiring the passage of laws taxing, by a uniform rule, all moneys, &c., and the decision of the court in the case of the *City of Zanesville vs. Richards*, holding that it applied to all taxation for revenue purposes, he says: "The general assembly is no longer invested with the discretion to apportion the tax, and to determine upon what property, and in what proportion the burden shall be laid. A uniform rate per cent. must be levied upon *all* property subject to taxation, according to its true value in money; so that all may bear an equal burden. If laws of the character of those now under investigation are controlled by this section, it is evident they cannot be sustained. They do not impose the tax upon all the property of the city or village, nor is it apportioned according to the true value in money of the property upon which it is laid. As the mode prescribed in this section is sufficient to enable municipal corporations to raise a revenue for the accomplishment of all their legitimate purposes, had

the constitution contained nothing further to evince the intention of its framers, it might be argued (and I think conclusively), that any other mode of levying taxes for any purpose, was necessarily excluded.  But it does contain a further provision, which every sound rule of construction binds us to regard, and which seems utterly inconsistent with such a conclusion." He then quotes the 6th section of their 13th article, and says further: "It is very clearly our duty to give effect to the natural and obvious import of the language of this section.  It relates to the organization of cities and villages, and imposes upon the general assembly, the very important duty of so restricting the powers, it was supposed, they would possess, as to prevent their abuse.  Amongst these is the power of assessment.  This power had for many years been in constant and active exercise in every part of the state, and was perfectly understood by every member of the convention.  The popular as well as legal signification of the term, had always indicated those special and local impositions upon property, in the *immediate vicinity* of improved streets, which were necessary to pay for the improvement, and laid with reference to the special benefit which such property derived from the expenditure of the money. They had always differed widely from the ordinary levies made for the purposes of general revenue.  To confound them now in giving a construction to the second section of the 12th Article, is to make not only unmeaning, but utterly absurd, a material part of the 6th section of the 13th Article. To *restrict*, or regulate the exercise of a power, furnishes the strongest possible implication of its existence; and to impose upon the general assembly the duty to do this, in respect to a power which did not exist, or which had been expressly prohibited, would be nothing better than nonsense.

"It is our duty to give such a construction to the constitution as will make it consistent with itself, and will

harmonize and give effect to all its various provisions. To do this, we have only to suppose that the convention used language with reference to its popular and received signification; and applied it as it had been practically applied for a long series of years. That where taxation is spoken of in the second section of the twelfth Article, reference is made to the general burdens imposed for the purpose of supporting the government, and the revenue raised expended for the equal benefit of the public at large; while the power of *assessment* referred to in the sixth section of the thirteenth Article, although resting upon the taxing power, was intended to describe a distinct and well known mode of levying a local burden upon particular property, with reference to the *peculiar* and *specific* benefit derived to such property, from the expenditure of the money. The general language of the first of these sections is thus only so far restricted as to give effect to the specified provision contained in the last. By the first, as the money is raised and expended for the equal benefit of all, no discretion is left with the general assembly; but the tax must be levied equally upon all property, according to its true value. But in the exercise of the power of assessment, legislative discretion, in apportioning the burden according to the benefits, is left as broad and unfettered as under the constitution of 1802. The last of these sections contemplates a delegation of the power to municipal corporations, and imposes upon the legislature the *duty* (as yet very imperfectly performed), of so restricting its exercise as to prevent abuse. A failure to perform this duty may be of very serious import, but lays no foundation for judicial correction."

To these remarks, which seem to us so applicable to, and conclusive upon the point under consideration, I deem it unnecessary to add one word of my own. In our opinion the provisions of the charter authorizing such assessments, are

no infringement of the constitution. It may be, as was claimed in argument by the appellant's counsel, that the citizens and owners of property in Milwaukee have suffered great wrong, and that much mischief has been caused by the improper exercise of this power on the part of the municipal authorities. If this be so, it is attributable, firstly, to the failure of the legislature to perform the duty solemnly imposed upon them by the constitution, to *restrict* its exercise by the city authorities so as to prevent abuses, and secondly, to a want of proper care and caution in its exercise by the authorities. The remedy lies in part with both, but the action, or want of action on the part of either, is beyond the reach or control of this court.

The power of the legislature to declare the effect of instruments made by public officers under the sanction of law, such as the *tax list* of the city of Milwaukee, when offered in evidence in a court of justice, has been already determined by this court in the case of *Delaplaine vs. Cook,* 7 Wis., 44. It was there decided that they could do so. The objection that a fractional part of a lot cannot be assessed and sold, seems wholly untenable. We can see no good reason for it. None is offered.

The point that the verdict exceeds the amount of money paid by the plaintiffs to redeem the lot, and the interest from the time of payment, cannot be made here. No motion for a new trial on that account was made in the court below, and hence no review of the *facts* can be had here.

The judgment of the county court is affirmed with costs.