GATES, Respondent, vs. PARMLY and others, Appellants.

*December 19, 1895 — May 22, 1896.*

VENDOR AND PURCHASER OF LAND. (1, 2, 8) *Action to recover purchase money: At law or in equity? Waiver of vendor's lien: Fraud.* (3–5) *Relief against penalty: Condition precedent: Furnishing abstract: Contract construed.* (10) *When abstract may be tendered.* (6, 7) *Former judgment: Res adjudicata.* (9) *Marketable title: Tax deed.* (11–16) *Partial failure of title: Penalty or liquidated damages? Rule of damages: Interest: Prior sale of standing timber.* (19) *Expense of perfecting title.* (17, 18) *Practice: Appeal: Reopening case on merits: Costs.* (20) *Briefs.*

1. An action by the vendor for specific performance of a contract for the sale of lands, in which he seeks relief from a penalty or forfeiture imposed by a condition precedent in the contract and to enforce a vendor's lien for unpaid purchase money, is an equitable action in which the defendants are not entitled, as matter of right, to a trial by jury.

2. A stipulation in a contract for the sale of lands that it shall be construed "to be a personal contract between the parties, and its terms and provisions shall constitute no lien" on the lands, operates as a waiver of any claim for a vendor's lien, but does not preclude the vendor from maintaining an action on equitable grounds to recover unpaid purchase money.

3. Equity will relieve against a penalty or forfeiture, even though it is in the form of a condition precedent, where it was evidently intended merely as a security for the payment of money or for the performance of an act the failure to perform which may be compensated in money.

4. At the time of the delivery of a deed of a large number of tracts of land, one half of the purchase price was paid and the parties made a further contract providing that if the vendor should not, by a specified date, furnish an abstract showing a perfect title, no further sum should be due from the vendee, but he should hold the title to the lands free from all claims for further purchase money, unless the title should be defective as to a certain quantity of lands only (a small fraction of the whole), or less, in which event the vendee was to have a deduction at the rate of $5 per acre or as much more as the lands to which the title proved defective should be worth. *Held*, that this provision was in the

Gates vs. Parmly and others.

nature of a penalty or forfeiture, intended by way of security, and was not a provision for liquidated damages.

5. The contract in such case further provided that if the vendor furnished the abstract as agreed the vendee would pay the balance of the purchase money in instalments at specified times thereafter. *Held,* that such further payments would not become due until after the abstracts were furnished showing a marketable title.

6. A judgment of peremptory nonsuit in an action at law by the vendor to recover the balance of such purchase money is not a bar to a subsequent equitable action by him to be relieved from a forfeiture of such money and to enforce payment thereof.

7. Judgment in said previous action, upon a counterclaim, to the effect that the vendees were not entitled to have the deed from the vendor (which contained a special warranty only) reformed by inserting full covenants therein, was not an adjudication that the giving of such deed was a full performance of the contract on the part of the vendor.

8. The vendor being *sui juris* and not illiterate, a misrepresentation by the vendees or their attorneys, at the time the contract was made, as to the operation and effect of a stipulation that it should be construed as a personal contract between the parties and that its terms and conditions should constitute no lien on the lands, does not prevent such stipulation from operating as a waiver of the vendor's lien.

9. A tax deed, under our statute, fair upon its face, is *prima facie* a marketable title which the vendee of lands is bound to accept as such, unless specific objection is made thereto and at the hearing, or upon the usual inquiry or reference as to the state of the title, it is found not free from reasonable doubt.

10. Where time was not of the essence of the contract, a vendor of land who agreed to furnish by a specified time an abstract showing a perfect title may be allowed to tender the abstract at the trial of an action subsequently brought by him for specific performance.

11. A provision in a contract for the sale of 20,000 acres of land that in case the title should prove defective as to 800 acres only, or less, the vendee should be allowed $5 per acre for each forty acres of said 800 acres to which title should so prove defective, and as much more than $5 per acre as it should be actually worth, is *held* to have been intended as a rule of damages and not by way of penalty.

12. But where the whole purchase price was only $45,000, a stipulation that the vendor should pay $5 per acre for each acre the land

should fall short of 20,000 acres is *held* to be in the nature of a penalty and not a stipulation for liquidated damages.

13. The measure of damages for failure of title to part only of the lands included in a contract of sale is such fractional part of the whole consideration agreed to be paid as the value, at the time of the purchase, of the part to which the title is found defective bears to the value of the whole quantity purchased, with such interest as the terms of the contract render equitable.

14. The title of the vendor of lands is defective if, by a prior valid contract, he has sold the standing timber thereon to third persons and the interests of such persons have not been surrendered or released or the time within which they were to cut and remove the timber has not already expired; and in an action by the vendor for specific performance of the contract for the sale of the lands such objection to his title is not removed by evidence that the vendees of the timber have already cut and removed it, where they are not parties to the action so as to be bound by the judgment.

15. The question being as to the quantity of timber cut from lands, after their sale, under a prior contract by which such timber had been sold to another person, testimony of the vendor that he did not know what such quantity was, but that he settled with the vendee of the timber for 700,000 feet, was not competent.

16. The purchasers of the lands being entitled to an allowance for such timber as constituting a part of the lands purchased, are entitled also to interest thereon from the date of the last payment made to the vendor by the vendee of such timber.

17. The fact that parties to an equitable action did not understand that the entire equities of the case were being tried in the court below, but understood that only certain leading questions were to be heard and then a reference was to be had, upon which proof in detail was to be produced, is not a sufficient ground for opening the case upon the merits for further proofs, where, on appeal from the judgment, there is nothing in the record to show that such was the understanding, and some evidence appears to have been directed to every branch of the case.

18. In an action by the vendor of land, on equitable grounds, to recover unpaid purchase money, he may properly be charged with the entire costs of a reference ordered and of the litigation, where, if he had faithfully performed his contract, the litigation would have been unnecessary.

19. Where the title to lands sold with covenant for perfect title has been found defective and has been perfected by the vendees,

they are entitled to have deducted from the purchase price the amounts paid by them to perfect such title, not exceeding how- ever the sum they would otherwise have been entitled to had such title not been perfected.

20. Appellants' briefs of 189 pages are criticised as of unnecessary length, and allowance is made in the taxation of costs for forty- five pages only.

APPEAL from a judgment of the circuit court for Clark county: W. F. BAILEY, Circuit Judge. *Reversed.*

This was an action brought by the plaintiff against Henry C. Parmly as trustee for the defendants *Charles A. Avery, Samuel K. Gray, Aaron M. Wilcox, Z. S. Wilson,* and against him individually, to reform a certain contract concerning the sale and conveyance of about 20,600 acres of land in Clark county, and for a construction thereof, and for relief against an alleged penalty therein, and for judgment for the amount due the plaintiff for purchase money, and for strict. foreclosure and other relief.

It was alleged that the plaintiff was the owner in fee of the lands in February, 1888, described in the complaint, and that, in the transactions between him and the defendants, said Henry C. Parmly acted as such trustee for and repre- sented his codefendants as well as himself; that on the 29th of September, 1888, the plaintiff executed and delivered to the said Henry C. Parmly, as trustee, a contract, which is set out at length, in which it was recited in substance that June 16, 1888, a previous contract had been made between the parties by which the plaintiff sold and agreed to con- vey by warranty deed to said Henry C. Parmly the said lands for $45,000, one half cash, and the balance in one, two, and three years, in equal payments, with interest as therein stated, and guarantied to warrant and defend the title to said land, and that there were 10,000,000 feet of pine timber and lumber and 15,000,000 feet of hardwood timber and lumber, including basswood, thereon, and had further agreed

to furnish said Parmly, trustee, an abstract of title to the said land, showing perfect title in him (said *Gates*), and that he had a good and lawful right to convey the same; that there had been delay in furnishing abstracts of title, and the plaintiff had previously executed to Parmly, trustee, a warranty deed of a portion of the lands, and had on that day, September 29, 1888, delivered to him a warranty deed of all said lands, confirming said prior deed, and desired to receive the cash payment of $22,500. The said second contract recited that the plaintiff had furnished to Parmly, trustee, an abstract of a portion of the land, and had transferred to him certain outstanding tax certificates thereon, and that Parmly, trustee, had paid the plaintiff $22,500 in cash, and it was stipulated, in consideration of the premises, that the plaintiff should within four months furnish and deliver a complete abstract of title to said lands, and by August 15, 1889, he would furnish and deliver to said Parmly, trustee, an abstract of title thereof showing *a perfect title* in said plaintiff at the date of said deed to Parmly, trustee, or showing the title to have been made perfect prior to the making of such abstract; that in case of failure "to furnish such abstract, or if the abstract furnished failed to show a perfect title," as stipulated aforesaid, "*no further sum of money whatsoever* shall be held due from said Henry C. Parmly, trustee, to the said *James L. Gates*, for or on account of said property under this contract, or under the contract of June 16, 1888, or otherwise, but that the said Parmly, trustee, shall hold the said title to the said lands free and discharged of any claims whatsoever for further purchase money, and the said $22,500 at this date paid shall be in that event the full consideration and purchase price of said property, unless the title should be defective as to 800 acres only or less," in which event Parmly was to have a deduction at the rate of five dollars per acre therefor, or as much more as it should be worth. In case the plaintiff com-

plied with the terms of the contract as stipulated, Parmly, as trustee, was to pay him the further sum of $22,500, in payments and with interest as therein stated; and said named agreement was to take the place in all respects of the one of June 16, 1888. It was further stipulated that the second contract should be, and be construed "to be, a personal contract between the parties, and its terms and provisions shall constitute no lien on any real estate mentioned therein;" and the second contract contained the same guaranty as the former one as to the quantity of lumber and timber, and that, if the amount of land fell short of 20,000 acres, the plaintiff was to pay five dollars per acre for each acre it fell short, and pay on demand to Parmly, trustee, the actual value of any deficiency of lumber and timber.

It was alleged that *Gates*, at the date of said second contract, then being the owner in fee simple of said lands, sold the same to the defendants for $45,000, and by his deed set out in the complaint conveyed the same to Henry C. Parmly, trustee. The deed was one of special warranty only, as against persons claiming under the grantors. It was alleged that the plaintiff had fully performed said contract, and that the entire amount of purchase money had long since become due; that, although he had not performed to the fullest extent within the time expressly required, yet that time was not of the essence of the contract, and that extensions of time had been given after the four months specified in the contract; that the plaintiff had been to an expense of $3,000 in furnishing abstracts, and that the lands conveyed to the defendants in respect to the title of which there is no dispute, at the date of the deed, were and are of the value of $75,000; that the defendants had only paid the plaintiff $18,000, and the recital in the contract to the effect that the sum paid was $22,500 did not truly state the facts, and was retained therein by mistake and oversight; that the clause therein declaring the contract to be a personal one and that

its terms and provisions should constitute no lien on the lands, was inserted therein through fraud, false representations, and connivance of the defendant Henry C. Parmly, trustee; "that when the contract was read to the plaintiff, his attention was directed to it especially, and he inquired of said Parmly and his attorney, and was assured by both of them, falsely and fraudulently, that the clause cut no figure whatever in the contract, that it was merely formal, and that by it plaintiff released to the defendants no rights he had, either in law or equity," and he signed it relying on such statements.

The plaintiff averred that, in an action commenced in the circuit court for Clark county by him against the defendants, wherein judgment was rendered March 7, 1891, it was adjudged that the said deed so executed as aforesaid was a full compliance with, and performance by the plaintiff of, the contract on his part; and the plaintiff insisted that the condition precedent stated in the contract should be construed and held to operate by way of penalty or forfeiture, and not as liquidated damages, and did not impose on the plaintiff the loss of $22,500, but only such damages as the defendants might show that they had in fact sustained, but the defendants were insisting upon said clause and a forfeiture of $22,500 under the same; and judgment was asked as above stated.

The defendants, in their answer, denied that the plaintiff was at any time the owner of all the lands described, and alleged that he had no title nor right of possession of a large part thereof, and could not and did not convey the same by said deed, and specified defects and failures of title of various kinds to a great part of the lands described therein, and that he had not since conveyed them to the defendants. They alleged that they paid on said purchase $22,500, and denied that any mistake in the recital of the contract on that subject occurred, or that any other sum ever became

due, and denied that the plaintiff fully performed the said contract, and insisted that the condition precedent in respect to the second sum of $22,500 had not been performed, and pleaded the terms of the contract in that respect in bar of the plaintiff's claim, denying that the plaintiff delivered as required abstracts of title showing perfect title in all said lands, and that, as shown by said abstracts, the title to 6,000 acres of said lands had failed; that, as to over 100 forty-acre tracts, the plaintiff had sold all the pine timber thereon to the Northwestern Lumber Company, and since the contract with said Parmly, trustee, it had entered thereon, and cut and removed a large quantity of valuable timber therefrom; that the title to a considerable portion of the lands was by tax deeds which had not been recorded three years, and they were liable to be attacked and held void; and that there were liens and incumbrances on other portions; and that some of said lands belonged to other parties,— all of which appeared by the abstracts. The defendants insisted that there had been a breach of the contract as to the amount of pine and hardwood timber on said lands at the time of the sale, and alleged that the plaintiff had sold and conveyed away such timber, so that, at the time of the execution of the contract, there were on said lands not to exceed 3,000,000 feet of pine timber or lumber, and 5,000,000 feet of hardwood, including basswood, and the defendants had been damaged, by reason of the premises, $14,000. The defendants further pleaded in bar a part of the same judgment in the previous action by the plaintiff against the same defendants, rendered March 7, 1891, mentioned in the plaintiff's complaint, alleging that said action was for the same cause as the present action, and that judgment was given thereon on the merits dismissing the plaintiff's complaint, and that such judgment remained in full force, etc.

The court found, among other things, that the plaintiff, prior to January 1, 1889, delivered to the defendants a com-

plete abstract of the lands described in the contract, show-
ing complete title to the defendants through the plaintiff's
deed, except as to tracts mentioned in groups under subdi-
visions 1 to 14. It was found that the plaintiff sold, or con-
tracted to sell, the pine timber on eighteen forty-acre tracts
to various parties, but the court was of the opinion that
proof given on the trial to the effect that the timber had
been cut off cured the defects of title; that October 13, 1887,
the plaintiff had entered into a contract with the North-
western Lumber Company by which he agreed to cut, haul,
and deliver to it all the pine timber standing and growing
upon 108 forty-acre tracts, and transferred the title to such
timber to said company; that, during the winters of 1888–89
and 1889–90, the plaintiff cut off said lands 700,000 feet of
pine, which completed the delivery of timber under said
contract, and the said company conveyed to said plaintiff
the said tracts October 14, 1890; that the defendants pur-
chased with notice of said contract, and subject thereto. To
nineteen forty-acre tracts, containing 760 acres, the plaintiff
had no title, and conveyed none; and as to ten other forties
the tax deed under which the plaintiff claimed was im-
peached, and the lands were recovered, because the notice
of tax sale did not specify that the lands were to be sold
"at public auction," but the court found in favor of its
validity. The title to a few other tracts appears defective,
and there were tax sales of some of the lands from which
the defendants had to redeem, paying $206.93 on that ac-
count; that nine particular forties of the land to which the
plaintiff had no title were worth $2,880; that as to eleven
tracts, the plaintiff tendered to the defendants at the trial a
warranty deed describing and an abstract of title showing
corrections as found, but the defendants refused to accept
the same; and that as to ten other forties, the title to which
was defective, there was no proof of value. In respect to
the quantity of pine timber taken off the lands by the plaint-

iff for the Northwestern Lumber Company, found at 700,000 feet, of the value of $1,400, the evidence of an experienced estimator satisfactorily shows that the real amount was 2,000,000 feet, and there was really no competent evidence that it was any less. The evidence as to the title to the lands described in the deed is, in many respects, extremely unsatisfactory, and the abstracts are lengthy, and extend to between 400 and 500 tracts, and counsel differed widely as to the results shown by them.

The court further found that the defendants, prior to September 29, 1889, knew that the plaintiff's title to the lands consisted in general of tax titles; that he was to give no other or better title, provided that such tax titles should appear valid on their face and superior to other titles thereto, with a covenant that the plaintiff had not, by any act of his, incumbered or clouded his title, such as it was; that after August 15, 1889, the plaintiff expended time and money in endeavoring to perfect the title to portions of the lands, and the defendants knowingly received the benefit of it without objection; that the lands, at the date of the contract, were worth over $45,000; that the evidence to show that the lands in question did not have on them the amount of timber and lumber specified in the contract was insufficient and unreliable; that it was adjudged and determined in the previous action between the parties that the plaintiff, by the terms of the contract, was not to, and did not, warrant the title to the lands embraced therein.

As conclusions of law, the court found that it was not the intent of the parties that the plaintiff must show and have a complete title to all the lands as a condition precedent to the payment of the deferred payment, but that the conditions of the contract were fully met when an abstract of title was delivered and furnished showing such complete title, and that the abstract as shown at the trial showed a complete title in the plaintiff except as to 760

acres; that the several conveyances of standing timber upon portions of said lands did not constitute clouds upon the plaintiff's title, and that when the timber was cut such conveyances were exhausted; that the provision of the contract that it should be construed as a personal one, and that it was not to constitute a lien upon any real estate therein mentioned, constituted no bar to the enforcement of a vendor's lien, and the plaintiff was not bound by it; that the condition precedent in the contract was in the nature of a penalty for nonfulfilment, and not for liquidated damages; that under the circumstances of the case, the plaintiff having completed and perfected the abstract before the case was finally submitted, there was such a compliance with the terms and conditions of the contract as to entitle him to recover the balance of the unpaid purchase money, less the value of the lands to which the abstract failed to show complete title, in no case less than $5 per acre, and less the value of the timber cut from the said lands subsequent to the making of said contract, and less the unpaid taxes and redemption money received by plaintiff according to the statement, which showed the balance due to be $15,949.06, for which plaintiff was entitled to a decree, without interest, and without costs to either party. The deductions allowed to the defendants were for $2,880, for nine forties; the contract price of ten other forties, $2,000; $1,400, for 700,000 feet of timber cut on the Northwestern Lumber Company contract; and the amount paid for redemption and redemption money, $270.94.

Numerous exceptions were taken to the material portions of the finding and in respect to the rejection of the evidence offered during the trial. Among other things, at a late period in the trial and evidently out of its regular order, the defendants' counsel offered in evidence various tax deeds from Volume 29 of Deeds, under which it was claimed the plaintiff made out title for over twenty tracts of the land,

and which the defendants' counsel claimed were void on their face, no objection being made to their reception. The court refused to receive them. The plaintiff's counsel then offered other abstracts showing the state of the title up to that time. Objection was made that over four years had elapsed during which time the plaintiff had failed to perfect the abstracts according to the contract, and that the defendants had no time then to examine them. They were, however, received. Thereupon the trial closed.

Such other matters as are material are stated in the opinion. The plaintiff had a money judgment in the usual form for $15,949.06, from which the defendants appealed.

For the appellants there were briefs by *O'Neill & Marsh*, and oral argument by *James O'Neill*.

*J. M. Morrow*, attorney, and *F. C. Winkler*, of counsel, for the respondent.

The following opinion was filed February 18, 1896:

Pinney, J. 1. The defendants' counsel contend that this is a legal action, in which they were entitled, as a matter of right, to a trial by jury; that the provision in the contract requiring the delivery of a complete abstract of title to the lands described in the contract and deed by August 15, 1889, and that in case of failure to furnish it, or if it failed to show a perfect title in the plaintiff at the date of the conveyance he had made to the defendant Parmly, trustee, or to have been made perfect in him prior to the making of such abstract, then no further sum of money should be held due to the plaintiff under the contract or otherwise, but that the said Parmly, trustee, could hold said lands free and discharged of any further claim for purchase money, and the $22,500 already paid should be the full price and consideration for the lands, was a condition precedent to the right to recover the second payment of $22,500 of purchase money, or any part thereof; and, as it was stated that such condi-

tion had not been performed within the time limited, the plaintiff could not recover any sum whatever, either in a legal or equitable action.

The allegations of the complaint and prayer for relief show conclusively that the action is an equitable one, in the nature of an action for specific performance and for relief from a condition precedent, by way of a penalty or forfeiture, as security for performance on the part of the plaintiff, and not a provision for liquidated damages.   A vendor may maintain an equitable action against a vendee for specific performance of a contract for the sale and conveyance of lands when he agrees to convey to the vendee, and the latter merely promises to pay a certain sum as the price.   Since the latter may, by a suit in equity, compel the execution and delivery of a deed of the premises, the vendor may also, by a similar equitable action, enforce the undertaking of the vendee, although the substantial part of his relief is the recovery of money.   Pomeroy, Spec. Perf. § 6.   As the vendor in this action seeks relief from a penalty or forfeiture imposed by a condition precedent in the contract and to enforce a vendor's lien for unpaid purchase price, the jurisdiction of equity is undoubted, for in such a case he cannot have a complete and adequate remedy at law, as of these questions a court of law has no jurisdiction.

2. The rule is universal at law that the failure to perform a condition precedent is a perfect bar, and, in general, the rule is the same in equity unless there is some peculiar ground of equity to take the case out of the general rule. In *Davis v. Gray*, 16 Wall. 229, 230, it was said:   "There is a wide distinction between a condition precedent where no title is vested and none is to vest until condition performed, and a condition subsequent operating by way of defeasance.   In the former case equity can give no relief.   Failure to perform is an inevitable bar."   And the case of *Wells v. Smith*, 2 Edw. Ch. 78, 83, was referred to.   But the case of *Davis v.*

*Gray* was that of a condition *subsequent*, and it was held that equity would interfere in such a case, and relieve, upon the principle of compensation, where that principle could be applied, giving damages if damages should be given and the proper amount could be ascertained. Equity will relieve against a penalty or forfeiture, and the authorities are quite generally agreed that it will do so even where it is in the form of a condition precedent, where it is evidently intended merely as a security for the payment of money or the performance of any act where failure to perform it may be compensated in money. It is not necessary that the penalty or forfeiture should be specified to be such in express terms; it is enough if such is the clear nature and substance of the provision. And, "although the distinction between conditions precedent and conditions subsequent is known and often mentioned in courts of equity, yet the prevailing though not the universal distinction as to condition there is between cases where compensation can be made and cases where it cannot be made, without any regard to the fact whether they are conditions precedent or conditions subsequent." Story, Eq. Jur. §§ 1314–1316. And the same learned author says: "In cases of this sort, where the stipulation is in the nature of a *security*, and specific performance is sought to be enforced, and yet the party has not punctually performed the contract on his own part but has been in default, and admitting of compensation, there is rarely any distinction allowed in courts of equity between conditions precedent and conditions subsequent." Story, Eq. Jur. §§ 1315 *et seq.;* Id. § 1320.

Upon the execution of the contract, the defendants became, in the estimate of a court of equity, the owners of the land, and the plaintiff the equitable owner of the purchase money which they held in trust for him; and the condition in the contract operated as an imperfect mortgage or pledge of his equitable ownership of the purchase money, that he

would furnish and deliver, on or before the time specified, an abstract of title showing perfect title to the lands, and such imperfect mortgage or pledge would become redeemed or avoided upon what would be regarded as an equitable performance on his part.   If the vendee obtains title to the lands or damages which can be regarded as compensation for partial failure, he gets all that, in justice, he is entitled to. This doctrine has been applied to many cases of breach of condition precedent where the parties could be put in the same situation as if the condition had been performed, and so it would seem that where the condition is security for the payment of money or the performance of any particular act, or in the nature of a penalty or forfeiture for nonperformance of such condition, such relief may be granted.   Pomeroy, Spec. Perf. §§ 391, 392; Waterman, Spec. Perf. § 435; *Grigg v. Landis,* 21 N. J. Eq. 494; *Edgerton v. Peckham,* 11 Paige, 352, 363; *Sanders v. Pope,* 12 Ves. 282; *In re Dagenham Dock Co.* 8 Ch. App. 1022.   But, where there cannot be any just compensation decreed for the breach, equity will not interfere.   It is insisted by the plaintiff's counsel that the defendants had, by their contract, waived the condition in question; but we do not find any evidence that would justify such a conclusion, and we think that, upon well-established equitable principles, the relief sought from the breach of the condition precedent in this case may be properly granted.

3. As the provision of the contract in question was evidently intended by way of security, quite as much so as if the penalty or forfeiture had been expressly provided for and named as such, we think it clear that the doctrine in respect to stipulated or liquidated damages is not applicable to the case.   The contract sufficiently indicates that it was not intended that, in case of a breach of the condition, title to lands in excess of two thirds or three fourths or seven eighths of the entire quantity of the lands to which title had

Gates vs. Parmly and others.

passed to Parmly, trustee, under the deed, was to be retained, and the second instalment, $22,500, of the purchase price, as well, should be considered or held as liquidated damages. It is not expressly or in substance so provided. The great disparity between the damages which might thus be claimed for a breach or failure to convey title to a one-fourth or a one-eighth part of the land, and one half of the entire amount, refutes the idea that the parties intended that the second payment of $22,500 should be retained as liquidated damages, by reason of the difficulty of proving the real damages, or as a possible or reasonable approximation to the damages which might arise. If the provision was designed as a forfeiture or penalty, or condition in the nature of such as security, like a bond for $22,500 for the performance of the condition, it could not well be maintained that a liquidation of damages at that sum was intended. There is no absolute rule as to when the sum named in the contract is to be treated as liquidated damages, but in each case the intention of the parties is to be looked at. Story, Eq. Jur. § 1318. The wide disparity between the sum named and the damages that the parties must have anticipated might occur inclines the court to reject the claim that it was intended as liquidated damages. The principal cases in this state relied upon by the defendants are considered in *Manistee Iron Works Co. v. Shores Lumber Co.* 92 Wis. 21. It would be clearly unreasonable to hold that the parties intended, in the case of a slight or inconsiderable breach of the condition, that the damages were to be liquidated at the sum of $22,500. Such a position is clearly untenable.

4. The second contract, under date of September 29, 1888, was a new one, and took the place of the former one thereafter, for all purposes relating to the land transaction between the parties. It was expressly so stipulated, in substance, " that, upon the execution and delivery of this

contract, said contract of June 16, 1888, shall be void and of no force." The covenant in the second contract for the delivery, August 15, 1889, of an abstract of title to the lands embraced in the deed, showing a perfect title in said *Gates* at the date of that deed, or to be made perfect prior to the time of making said abstract of said lands, could not be performed without a conveyance of what would be regarded as a marketable title, and it was necessary that it should be shown to be such by the abstract. The deed and contract must be construed together, and the contract was so far executory that the second payment would not become due until after a perfect title was made out in Parmly to the lands, as therein provided. There is nothing in the transaction between the parties to show that the defendants ever waived their right to insist upon such a title, or to accept tax titles or abstracts of such with a deed of the same, irrespective of whether it conveyed what would be regarded as a valid title; nor was it so adjudicated by the judgment in the suit at law by the plaintiff against the defendants. What would be regarded as a good title was of the substance of the transaction. *Bateman v. Johnson*, 10 Wis. 1; *Falkner v. Guild*, 10 Wis. 563; *Taft v. Kessel*, 16 Wis. 273; *Davis v. Henderson*, 17 Wis. 105.

5. Both parties have pleaded the judgment in the previous action,— the defendants, to show that the plaintiff is barred and concluded from obtaining relief in this action; and the plaintiff, as conclusively showing that the deed executed and delivered to Parmly, trustee, which, instead of being a warranty deed as provided in the contract, was a deed with a special covenant only against persons claiming by, through, or under the plaintiff, was full performance on his part. The defendants' contention is clearly untenable. The judgment they plead was one of peremptory nonsuit against the plaintiff, and left him at liberty to bring another legal action for the same cause (*Gummer v. Omro*, 50 Wis. 247), but,

as his complaint here is upon an equitable cause of action not made the subject of litigation in the former one, the adjudication is clearly no bar as against the plaintiff. The part of the judgment upon which the plaintiff relied was rendered upon a counterclaim by the defendants, claiming that the deed from the plaintiff to Parmly, trustee, ought to be reformed so as to insert therein the full covenants of a warranty deed. But the court denied the relief sought, and held only that they were not entitled to have the deed so reformed; and nothing further was in issue or adjudicated.

6. The evidence does not warrant the conclusion that there was any error or mistake in the recital of the contract that $22,500 had been paid, and the circuit court properly regarded that as the principal sum remaining unpaid, subject to equitable deductions. The stipulation in the contract that it should "be construed as a personal contract between the parties, and its terms and provisions should constitute no lien upon any real estate mentioned therein," operated and was evidently intended as a waiver or relinquishment, on the part of the plaintiff, of any claim for a vendor's lien for unpaid purchase money. The plaintiff admits in his complaint that when the contract was read to him his attention was particularly called to this provision; but he claims, substantially, that the defendant Parmly or his attorney misrepresented its operation and effect. The plaintiff was *sui juris*, and not illiterate. He was dealing with these parties at arm's length, and he knew the facts, and was bound to know the law. There is no ground whatever shown for holding that the provision in question was improperly or fraudulently inserted, or that full force and effect ought not to be given to it according to its obvious meaning.

7. An important question in this case is whether a tax deed which the statute (R. S. sec. 1176) provides "shall vest

in the grantee an absolute estate in fee simple in such land, subject however to all unpaid taxes and charges which are a lien thereon and to redemption as provided for in this chapter," — by infants and persons under disability (S. & B. Ann. Stats. sec. 1166), — and which, when duly witnessed and acknowledged, may be recorded "with like effect as other conveyances of land," and upon which the short limitation in favor of tax titles has not run, in the absence of any known defect in the tax deed or proceedings, will constitute what can be regarded as *a marketable title* which a vendee is bound to accept.

The statute, in substance the same as the present one as to the effect of tax deeds, has been in force ever since 1850; and in the case of *Delaplaine v. Cook*, 7 Wis. 44, as early as 1856, this statute was sustained and applied, and it was held that the legal presumption attending a tax deed fair upon its face might be rebutted and overthrown by evidence on the part of the party attacking the deed, the *onus probandi* being upon him. This rule has been repeatedly affirmed. The latest case in which the validity of such a deed was fully considered is *Hotson v. Wetherby*, 88 Wis. 324; and the validity of the three years statute of limitation, in favor of and against tax deeds, was sustained in *Edgerton v. Bird*, 6 Wis. 527, and *Falkner v. Dorman*, 7 Wis. 388, and has been uniformly upheld. At the same time, it has been as constantly affirmed that tax titles, being under a mere naked statutory power, are *stricti juris*, and that the statutory authority must be strictly complied with or the title will be absolutely void. *Potts v. Cooley*, 51 Wis. 355, and cases cited. How easily the *prima facie* character of the deed may be impeached will appear from the following, among many other adjudications that might be cited: *Lain v. Shepardson*, 18 Wis. 59; *Jarvis v. Silliman*, 21 Wis. 599; *Iverslie v. Spaulding*, 32 Wis. 394; *Sprague v. Coenen*, 30 Wis. 211; *Cotzhausen v. Kaehler*, 42 Wis. 332; *Scheiber v. Kaehler*, 49

Wis. 301; *Hebard v. Ashland Co.* 55 Wis. 148; *Ward v. Walters,* 63 Wis. 43; *Hiles v. Cate,* 75 Wis. 91; *Hiles v. Atlee,* 80 Wis. 220; *Easley v. Whipple,* 57 Wis. 485; *Curtis v. Morrow,* 24 Wis. 664. But, if the statute has been in all respects complied with, a tax title is as good as any other. *Harding v. Tibbils,* 15 Wis. 232. And certainly, after the three years statute of limitation has run in its favor, there is no reason to doubt such a title. *Lindsay v. Fay,* 28 Wis. 177; *Dean v. Earley,* 15 Wis. 100; *Knox v. Cleveland,* 13 Wis. 245.

Whether such a title is a marketable one is a question in respect to which there is an almost entire want of authority. A tax title has nothing to do with the previous title. It does not in any way connect itself with it. It extinguishes the old title and all liens and equities depending upon it. *Lessee of Neiswanger v. Gwynne,* 13 Ohio, 74; *Ross v. Doe,* 1 Pet. 664. As a general rule, a title which is open to judicial doubt is not marketable; but what may be regarded as such doubt is not easily defined, depending much upon the discretion of the court. But in no case will a purchaser be compelled to accept and pay for a title which he can only acquire in possession by litigation and judicial decision, nor where it is evident that his possession must be defended in like manner. He is not bound to buy a lawsuit. Waterman, Spec. Perf. §§ 411 *et seq.* Specific performance will not be decreed at the suit of a vendor whenever the doubt concerning his title is one which can only be settled by further litigation, or when the court can see that the purchaser will, with reasonable probability, be exposed to *bona fide* adverse claims on the part of third persons. As the decree in the suit binds only parties to it, and constitutes no obstacle to the enforcement of adverse rights asserted against the title, the legal effect of events or acts collateral to it and capable of destroying its validity can only be determined by another judicial proceeding. Pomeroy, Spec. Perf. § 203; *Shriver v. Shriver,* 86 N. Y. 575; *Ludlow v. O'Neil,* 29 Ohio

St. 182; *Richmond v. Gray*, 3 Allen, 27; *Gill v. Wells*, 59 Md. 492; *Dobbs v. Norcross*, 24 N. J. Eq. 327; *Butts v. Andrews*, 136 Mass. 221; *Walsh v. Barton*, 24 Ohio St. 28. But facts must be known at the time which fairly raise a reasonable doubt and render the title doubtful, and not merely a possibility or conjecture that such a state of facts may be developed at some future time. In *Cattell v. Corrall*, 4 Younge & C. 237, ALDERSON, B., said in regard to a doubt from a fear of future litigation: There "must be a reasonable and decent probability of litigation. The doubt must be reasonable, and, so far as it depends upon contingent events and uncertain facts, their occurrence and existence must be fairly probable." Pomeroy, Spec. Perf. § 204; *Vreeland v. Blauvelt*, 23 N. J. Eq. 483; *Kostenbader v. Spotts*, 80 Pa. St. 430, 434. As applied to the case of a tax deed *prima facie* valid on its face, there must be some known grounds or reasonable belief, and not mere conjecture of the existence of facts which, if shown, would probably destroy the *prima facie* character of the deed and defeat the title. In Warvelle, Vendors, 52, it is said that "a title raised by tax sale is a purely technical, as distinguished from meritorious title, and depends upon a strict compliance with all the requirements of law, . . . but *no presumption can be raised* to cure radical defects in the proceedings, and the proof of regularity devolves upon the person asserting title; . . . that, owing to the complexity of procedure, the many errors which may arise, a tax title is regarded as among the poorest evidences of title to land, and is always taken with suspicion and viewed with jealousy." These observations are not, we think, applicable under a statute such as ours; and a tax title is just as meritorious in point of law as any other if the requirements of the statute have been complied with. A tax deed being *prima facie* evidence of title in fee simple, the title is not to be discredited by the courts in the absence of evidence showing a reasonable

probability of the existence of facts which render its invalidity fairly probable. The only decision we have met with upon the question whether a tax title is a marketable one where the deed is *prima facie* evidence of title in fee simple and of the regularity of the proceedings up to and including the execution of the deed, is in *Kramer v. Ricke*, 70 Iowa, 535, where it was held that such a deed was a title that would enable the vendor, upon objection to the title, to recover the purchase money, and that it was for the vendee to point out and sustain objections. After much doubt and hesitation, we have concluded that a tax deed, under our statute, fair upon its face, is *prima facie* a marketable title, which the vendee is bound to accept as such, unless specific objection is made and at the hearing, or upon the usual inquiry or reference as to the state of the title, it is found not free from reasonable doubt.

8. The objection that the abstract tendered at the trial, which shows that the objection of want of title to many of the tracts conveyed to Parmly, trustee, had been removed, was not in time, is untenable. It is not claimed in this case that time was made, by express stipulation or otherwise, of the essence of the contract; and in such a case, if the vendor is unable to show good title at the commencement of his suit, it is sufficient if he perfects it before the final hearing or the report on title by the master or referee. Pomeroy, Spec. Perf. § 376, and cases cited; Beach, Mod. Eq. Jur. § 612. Inasmuch as no such inquiry was directed here, it seems to be within the spirit of the rule to allow the abstract to be tendered at the trial, and the delay will be held immaterial, except upon the question of interest, if the vendor can make out his title at the time of the decree. *Jenkins v. Fahey*, 73 N. Y. 355; *Pierce v. Nichols*, 1 Paige, 244; *Brown v. Haff*, 5 Paige, 235.

9. A conveyance of all the lands included in the agreement was executed and delivered to the defendant Parmly,

trustee, at the time of the execution of the second contract, which was to be performed in the manner already stated: This fact, taken in connection with the express stipulation waiving the vendor's lien for unpaid purchase money, clearly shows that it was intended that the grantee should have immediate possession, with the right to sell and convey the lands at will, and that he was to come at once into the full enjoyment of the estate stipulated to be conveyed, but that the time for making the title thereto was to be extended to the 15th of August, 1889, when the abstracts showing title were to be delivered. The lands were purchased evidently for speculative purposes, and not because of their particular adaptation to any immediate use to which the vendees desired to devote them. It was stipulated in the agreement, in substance, that no part of the second instalment should become due or payable until one year from the date of the furnishing by the plaintiff of the abstracts showing perfect title to the lands, when $7,500 of said instalment was to become due without interest, and a like sum one year thereafter, with interest at the rate of six per cent. for said period of one year, and $7,500 two years thereafter, with interest at the rate of six per cent. for said period of two years. Inasmuch as it appears that, up to the time of the rendition of the judgment appealed from, the plaintiff had failed to furnish such abstract showing title as required by the contract, no part of the second instalment of $22,500 has become due or payable, and by reason of that fact, according to the stipulation of the agreement, that sum did not bear interest. The only relief to which the plaintiff can possibly be entitled is to have adjudged to him, on equitable grounds, the payment of such instalment, less such equitable deductions and allowances, by reason of the failure of title to portions of the land, by way of compensation to the defendants, as it shall appear ought to be made.

10. We have arrived at different conclusions from the

circuit court as to the deductions and allowances to be made to the defendants, which will now be stated. The contract provided that " if the said title to the said lands as to 800 acres only, or less, shall prove or be shown by such abstracts to be not perfect in said *Gates* or said Parmly, trustee, the latter shall be allowed the sum of $5 per acre for each forty acres of said 800 acres to which the title shall so prove defective, and as much more than $5 per acre as such lands shall be actually worth." This was manifestly agreed upon as the rule of damages, and not by way of penalty or forfeiture. The circuit court found the title conveyed defective to the extent only of 760 acres, 360 of which were worth $8 per acre, or $2,880; and the value of the other 400 acres was fixed at $5 per acre, under the contract, or $2,000,— in all, $4,880. But there should be a further allowance of $5 per acre for one forty to make up the entire 800 acres, requiring $200 to be added, making the deductions for the 800 acres $5,080. After a careful examination of the record, we find that the title to 2,141 acres, in addition to the 800 acres provided for by the contract, was defective, and not such as the defendants were entitled to receive under the contract, after allowing the plaintiff the benefit of all corrections and perfecting of title shown by the abstract produced at the trial. A list of such lands will be filed and remitted to the circuit court with the mandate herein, to the end that, upon a reference for that purpose, it may be ascertained what allowances or deductions from the unpaid purchase money shall be made on this account, there being no sufficient evidence in the record upon that subject. The defendant Parmly, as trustee, at the hearing of such reference, is to tender and deliver to the plaintiff a quitclaim of all right, title, and interest in or to the lands the title to which has been found defective and insufficient, acquired by, through, or under the said plaintiff by virtue of said contract dated September 29, 1888, and the deed thereunder

set out in the complaint, either directly or indirectly, upon paying to or crediting the defendants with all sums they have paid for taxes, and interest thereon from the time of such payment.   The rule of damages to be applied is stated in *Semple v. Whorton*, 68 Wis. 626, and the defendants are to be allowed such fractional part of the whole consideration agreed to be paid as the value, at the time of the purchase, of the tracts to which the title is found defective and imperfect bears to the value of the whole 20,000 acres agreed to be conveyed, with interest thereon from the 15th day of August, 1889, at which time there was a breach of the contract on the part of the vendor by failing to make out his title to these lands according to its provisions; but for a period not exceeding six years.   Such interest is to be allowed upon the ground that at the last-mentioned date the defendants were, by the contract, to have the beneficial use and enjoyment of these several tracts, and the right to sell and convey the same, as well as the use of the lands, or interest on the proceeds of their sale, so as to give them the full benefit of their contract and place them as near as possible in the same condition as if the plaintiff had promptly performed on his part.   The provision in the contract whereby the plaintiff agreed that, "if the amount of the land shall fall short of 20,000 acres, to pay $5 per acre for each acre it shall fall short," which would amount to $100,000 if the failure of title had extended to all the lands, whereas the purchase price was only $45,000, cannot be considered as a stipulation for liquidated damages, but is in the nature of a penalty; and the amount of deductions or allowances to the defendants cannot extend beyond the actual value of the tracts as to which the title was defective, to be ascertained in the manner above indicated.

As to quite a number of such tracts, the plaintiff had previously made valid contracts of sale to others of the timber standing or growing thereon.   These contracts passed an

interest in these lands to the several parties with whom they were made (*Young v. Lego*, 36 Wis. 394; *Daniels v. Bailey*, 43 Wis. 566); and, as there was no competent evidence to show that such interests had ever been surrendered or released, the title was, to this extent, defective. The court received evidence tending to show that the parties holding these contracts had cut off the timber to which they were entitled, and held that the outstanding contracts constituted no defect of title; but as the persons holding them were not parties to this action, and could not be concluded by a finding or judgment in it, it is plain that the objection to the title was not removed. Beach, Mod. Eq. Jur. § 610; *Fleming v. Burnham*, 100 N. Y. 1, 9; *Abbott v. James*, 111 N. Y. 673; *Chesman v. Cummings*, 142 Mass. 65, 68; and cases hereinbefore referred to on this subject. We do not include in this category cases where the time within which the timber was to be cut and removed had been limited to a period which had already expired.

As to another group of tracts, called the "Atlee Lands," it was shown that the tax deed under which the plaintiff claimed to make title was void for the reason that the lands were not, as the statute requires, advertised to be sold "at public auction." Atlee brought an action to recover the lands, and it was compromised by Parmly, trustee, quitclaiming the lands to him for $184.37, while acting in good faith on the theory, induced by the plaintiff's conduct, that the title was bad. The plaintiff, having certain tax certificates on these lands belonging to the defendant Parmly, trustee, and held with the view to perfect title, drew and retained certain redemption money thereon, to the amount of $64.01, which should be deducted from the $184.37; and the balance, $120.36, should be charged to the defendants in the adjustment of the final balance herein.

Of the lands embraced in tax deeds which were void on their face, having been executed before the time for redemp-

tion had expired, and under which the plaintiff claimed to make title, as to four tracts the title has failed, but as to 920 acres included in such deeds the title was subsequently perfected.   The court erroneously excluded these deeds; but, as the bill of exceptions shows that they were incurably void, the question is properly before the court, and the deeds were offered before the plaintiff had tendered his last abstract, and were not too late.   There were other tracts where the tax titles relied on were void for the reason that the lands were not subject to taxation; and as to very many others the titles appeared to be in other parties, who had not conveyed either to the plaintiff or to Parmly, trustee, his grantee; and as to still other tracts the testimony of the plaintiff shows that the tax deeds relied on did not convey any title to him or either of the defendants.

The title to the lands known as the "Northwestern Lumber Company Tract" seems to have been perfected; but the allowance made to the defendants for 700,000 feet of timber cut off these lands, in performance of the plaintiff's contract with that company, and after he had made a deed of the same to Parmly, trustee, according to competent and uncontradicted evidence should have been 2,000,000 feet, of the value of $4,000, for which sum the defendants are to be allowed accordingly.   The evidence of the plaintiff was that he did not know what the amount thus cut from said lands was, but that he settled with the company for 700,000 feet. This was not competent evidence upon that subject.

The allowance to the defendants for $206.93 for money paid to redeem portions of the lands from tax sales is to stand as made by the circuit court.

11. The evidence to show a breach of the guaranty in the contract that, at the time it was made, there were 10,000,000 feet of pine timber and lumber, and 15,000,000 feet of hardwood timber and lumber, including basswood, on the lands, to the defendants' damage, is too vague, uncertain, and un-

Gates vs. Parmly and others.

satisfactory to justify any allowance for damages under their counterclaim in this respect.

Upon taking and stating an account showing a balance in favor of the plaintiff according to the principles thus settled, he is to have a judgment therefor in his favor, without interest and without costs; but the defendants are to be allowed the proper costs of the reference herein directed. The voluminous character of the record and printed case, and the wholly unnecessary length of the appellants' brief, have rendered the examination and decision of the case unusually difficult and laborious. In the taxation of costs, allowance will be made for only forty-five pages of the 189 of the principal brief and reply of the appellants.

It follows that the judgment appealed from must be reversed.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for further proceedings in accordance with the opinion of the court.

NEWMAN, J., took no part.

The following opinion was filed May 22, 1896:

PINNEY, J. The plaintiff, as well as the defendants, has moved for a rehearing, but each for different reasons. The defendants' counsel have discussed anew the leading questions involved in their appeal, but we see no reason for departing from any of the legal conclusions announced in the opinion. The defendants cannot now be allowed to rescind the contract. They made no case in their answer and no claim in it for rescission. Manifestly, the stipulation in the contract that it should " be construed to be a personal contract between the parties " was not intended to preclude the plaintiff from maintaining an action upon equitable grounds for the recovery of unpaid purchase money. Full

VOL. 93 — 21

Gates vs. Parmly and others.

effect has been given to that stipulation in holding that he has waived the vendor's lien for the unpaid purchase money. It was pointed out that the intention manifested by the deed and contract was that the grantee should have immediate possession of the lands described therein, with the right to sell and convey the same at will, but the unpaid purchase money was not to become due until one year after the date for furnishing the abstract showing perfect title to the land, and that, according to the terms of the contract, the unpaid purchase money has not become due at law. Our attention is now called to the fact that the defendants were entitled to interest at the legal rate on the $4,000 allowed for the timber cut off the lands known as the " Northwestern Lumber Company Tracts," as defendants were entitled to that amount as constituting a part of the land sold to them. The plaintiff has been charged for receiving and improperly retaining this money, when it ought to have been paid over at once to the defendants. We think that the defendants' contention is correct, and that they are entitled to have interest on the $4,000 from the time the last sum was paid to the plaintiff by the Northwestern Lumber Company, and the direction in respect to the reference in the opinion is modified accordingly.

Both parties have presented points on these motions, apparently upon the supposition that they are to be allowed to go again into the merits of the case. This is not permissible. The case, as to all questions embraced in the record, except as otherwise stated in the opinion as modified, is concluded. If the parties failed to produce proper or sufficient evidence, it is now too late to supply the defect. This court can act only upon the facts contained in the record, and cannot review the finding of the trial court as to the facts, unless the points made are presented by proper exceptions to such finding.

It is insisted by the appellants that they did not under-

stand that the entire equities of the case were being tried in
the circuit court, but that only certain leading questions
were to be heard, and then a reference was to be had, upon
which proofs upon the different branches of the case, in de-
tail, were to be produced.   There is nothing in the record
to warrant this contention.   If there was any such mistake
or misunderstanding in this respect, application should have
been made to the circuit court to correct it.   Some evidence
appears to have been directed to every branch of the case,
and parties cannot be allowed to experiment with the court,
and retry cases, simply because they are disappointed at the
result and think that they may be able to make a better
showing upon another trial.   No legal ground is apparent
for opening the case upon the merits for further proofs.

The plaintiff has no ground of complaint for being charged
with the entire costs of the reference ordered, and of this
litigation.   Had he faithfully performed his contract, there
is no reason to suppose that this litigation would ever have
occurred.   The fault is wholly his own, and he has no right
to complain of the consequences.   Nor is he in any position
to complain of the allowance of $4,000 for timber cut and
taken off the lands.   He did not see fit to produce any evi-
dence on the question which a court could consider, and the
defendants did, and the result arrived at must stand.   By
the decision of this court, the allowance of $4,880 for the
value of the 760 acres to which the plaintiff's title proved
defective is to stand.   Compensation was still to be made
for forty other acres, to make up the 800 acres specified in
the contract.   The provision in question is for the benefit
of the defendants, and they may elect which forty on the list
is to be taken to make up the quantity specified, for which
$5 per acre, and what it may be worth over that sum, is to
be allowed to the defendants.

Much criticism has been directed in respect to the list of
lands for failure of title to which allowances by way of de-

Gates vs. Parmly and others.

duction are to be made to the defendants.    Considering the character and condition of the record, it is not surprising that errors have intervened in respect to a few of the tracts. We find that one forty-acre tract was by mistake omitted from the list already filed, and it will be added at the foot. Another forty (the S. E. ¼ of the S. E. ¼ of section 3, town 26, range 3) had been already included in the list of the trial court of lands to which titles were defective, and will be stricken off the list.    As to certain other forty-acre tracts, the plaintiff's title was found defective, and it is now pointed out that the record shows that the defendants have since perfected their title to these tracts.    They are entitled to deductions on account of these tracts to the amount they have paid to perfect their title to them, not exceeding the sum they would otherwise be entitled to had the title in each instance not been thus perfected, with the reasonable and proper costs and expenses attending the perfecting of such titles.    If it shall appear that the title to any of these lands, a special list of which will be at the foot of the former one, has been perfected by, or at the proper cost and expense of, the plaintiff, then no deduction or allowance will be made to the defendants therefor; but the case will not be opened to allow the plaintiff to show that the title to any of the other lands is not defective, or, if so, that it has been perfected, nor to allow the defendants to show that the title to any other tracts is defective.

With these modifications of the mandate, both motions for a rehearing will be denied, but without costs; each party to pay the clerk's fees on his motion.

*By the Court.*— Ordered accordingly.