McFARLANE, Appellant, vs. DIXON and another, Respondents.

*March 15—April 11, 1922.*

*Vendor and purchaser: Failure of vendor's title: Specific performance: Damages: Failure of title as to part of lands: Remedies.*

1. Where vendors who had agreed to convey two lots could not, for failure of title, convey one of them, the purchaser was entitled to rescind the contract.
2. One who makes a valid contract to sell land is bound to know whether he has title, and is answerable in damages if he is unable to fulfil the contract, his liability not necessarily depending on fraud or bad faith.
3. In an action for specific performance, entire failure of title is not in all cases a complete defense to the action, but the court may retain jurisdiction and give damages as compensation.

McFarlane v. Dixon, 176 Wis. 652.

4. Where there is a failure of title as to a portion of the land, the court may require the vendor to give the best title he can and order an amount abated from the purchase price for the deficiency of title or quantity or quality of the estate.

5. If a vendor agrees to convey land he knows he does not own, or if after making the contract he sells to another or otherwise disqualifies himself to make good his original agreement, he is liable for full compensatory damages, including those for the loss of the bargain.

APPEAL from a judgment of the circuit court for Rock county: GEORGE GRIMM, Circuit Judge. *Affirmed.*

Defendants agreed to sell to plaintiff two lots in the city of Janesville for $2,000. In the written contract, dated May, 1919, the lots were referred to as "lots 8 and 9, . . . the said premises belonging to W. J. McIntyre, deceased, and the said parties of the first part being residuary legatees and devisees under the will of W. J. McIntyre, deceased, and this agreement to be carried out upon the completion of the probate of the estate of W. J. McIntyre and upon the furnishing of abstracts showing good and marketable title in said first parties, to be conveyed by warranty deed."

It appears that for some years prior to his death W. J. McIntyre had paid taxes on lots 8 and 9, and that after his death both of these lots were included in the inventory of his property. In August, 1920, plaintiff tendered $1,879.50, being the balance due for the two lots. Some months before this time defendants had learned that lot 8 belonged to the estate of Henrietta A. McIntyre and had never been owned by W. J. McIntyre. Plaintiff testified that at the time of the tender in August, 1920, the reasonable value of each lot was $2,200.

The answer admitted the making of the contract, alleged that each thought defendants to be the owner of lot 8 because of a mutual mistake, and prayed that the contract be reformed so as to include only the lot in fact belonging to defendants by virtue of the will of W. J. McIntyre, and as so reformed specifically enforced.

The trial court found as facts that plaintiff received his

information as to the reputed ownership of the lots from his sister and from sources other than the defendants before negotiating for the purchase of the lots; that defendants received their information from the files of the probate court of Maricopa county, Arizona, and other sources; that defendants informed plaintiff that they were the residuary legatees under the will of W. J. McIntyre and that the will was in the course of settlement; that defendants did not claim or assert ownership of the lots other than as such legatees, and that the contract was not to be carried out until defendants furnished an abstract after the settlement of the estate; that defendants did not make any false representations in regard to either lot, and that each believed the lot to be included in the estate of W. J. McIntyre, and that defendants by virtue of being his legatees would have good title.

The court held as matters of law that, since there was no element of tortious conduct on the part of defendants, "the plaintiff may recover such fractional part of the consideration paid as the value, at the time of the purchase, of the piece to which the title fails bears to the value of the whole piece purchased," and that plaintiff should have a conveyance of lot 9 upon payment of $800. Judgment was entered accordingly, an allowance being made for certain outstanding bonds for street improvements, and costs being granted to neither party.

For the appellant there were briefs by *Fisher & Geffs* of Janesville, and oral argument by *A. M. Fisher.*

For the respondents there was a brief by *Jeffris, Mouat, Oestreich, Avery & Wood* of Janesville, and oral argument by *O. A. Oestreich.*

JONES, J. There are certain important facts in this case as to which there is no dispute. The defendants believed that they had the right to make the contract as the residuary legatees under the will and that they could convey good title.

The facts that both lots had been included in the inventory of the deceased and that for some years he had been paying the taxes on the lots, with such other facts as came to their knowledge, were circumstances well adapted to raise the belief that they were within their rights in making the contract.

When plaintiff brought the action for specific performance he knew that defendants could not give title to lot 8. In the prayer for relief in the complaint plaintiff demanded that a just deduction "from the purchase money of said two lots be made on account of defendants' failure of title and inability to convey to plaintiff said lot number 8 and on account of interest on plaintiff's purchase money which has been idle and on account of street-improvement bonds and liens against said lot number 9, and on account of damages sustained by plaintiff on account of defendants' failure, refusal, and inability to convey to him said lot number 8, and upon payment by plaintiff of the residue of said purchase money, if any, that said defendants specifically perform said contract as to lot number 9 by a conveyance of said lot to plaintiff and that they furnish to plaintiff an abstract of title showing a marketable title in said defendants of said lot to be conveyed to plaintiff." This plainly shows that the gist of the action was specific performance of the contract.

One of the court's findings was:

"That the plaintiff declared upon the trial that he did not desire to rescind the contract but to have it enforced by a conveyance to him of said lot 9, he receiving such credit on the balance of the purchase price as he might be lawfully entitled to by reason of the defendants' inability to convey to him lot 8."

It is true that plaintiff prayed for damages for the failure to perform the contract as to lot 8, and his counsel claim that for such nonperformance he is entitled as damages to the difference in value of the lot on the date of the contract

and the date when he tendered the balance of the purchase money. Whether plaintiff is entitled to such relief is the only issue in the case.

. Since defendants were unable to comply with a substantial part of the contract, plaintiff would have doubtless been entitled to a rescission if he had so elected, but he chose an entirely different and inconsistent remedy. - It has been often decided by this court that when a vendor makes a valid contract to sell land he is bound to know whether he has title, and is answerable in·damages if he is unable to fulfil the contract. In such cases his liability does not necessarily depend on fraud or bad faith. See cases cited in *Lee v. Bielefeld, ante,* p. 225, 186 N. W. 587. It is also a familiar rule that, where there is an entire failure of title, this is not in all cases a complete defense to the action for specific performance, but the court may retain jurisdiction and give damages as compensation. Pomeroy, Spec. Perf. (2d ed.) sec. 476.

Much greater difficulty arises in cases like the present where there has been a failure of the title as to only a portion of the land conveyed and where specific performance is sought. In an early case in this court it was held that where a purchaser seeks specific performance of a contract and the vendor has not the same interest in the land as that contracted for, or there is a deficiency in quantity, the vendee may enforce a performance of the contract by compelling the vendor to give the best title he can and have a just amount abated from the purchase money for the deficiency of title or quantity or quality of the estate. *Wright v. Young,* 6 Wis. 127. In another action for specific performance where the property sold was represented to contain forty-nine acres but in fact contained about thirty-two and one-half acres, the court followed the rule laid down in the foregoing case and said: ,

. "Where the title fails to only a part of the land conveyed, the grantee may recover, in an action on the covenants of

seizin and right to convey, or upon an agreement to convey, such fractional part of the whole consideration paid as the value at the time of the purchase of the piece to which the title fails bears to the whole purchase price, and interest thereon during the time he has been deprived of the use of such fractional part, but not exceeding six years." *Docter v. Hellberg,* 65 Wis. 415, 424, 27 N. W. 176; *Messer v. Oestreich,* 52 Wis. 684, 696, 10 N. W. 6; *Gates v. Parmly,* 93 Wis. 294, 66 N. W. 253, 67 N. W. 739; *Darlington v. J. L. Gates L. Co.* 151 Wis. 461, 138 N. W. 72, 139 N. W. 447.

The cases we have cited are in line with a leading case decided in England in 1775, *Flureau v. Thornhill,* 2 Wm. Blackstone, 1078, which has been much discussed by the courts and text-writers. Counsel for appellant do not contend that the rule adopted in that case and by this court should be changed, but that it should not be applied in the present case because, it is argued, defendants should have known the state of the title of the land they bargained to sell. This was equally true in the cases we have cited.

There are undoubtedly limitations upon the rule declared in the English case above cited and in the Wisconsin cases. For example, if the seller agrees to convey land he knows he does not own, or if, after making the contract, he sells to another, or otherwise disqualifies himself to make good his original agreement, he is liable to full compensatory damages, including those for the loss of the bargain. *Arentsen v. Moreland,* 122 Wis. 167, 99 N. W. 790.

The trial court followed the rule which has long prevailed in this court, and we consider that the facts fully justified the conclusion reached.

*By the Court.*—Judgment affirmed.