Gates v. Parmly, 113 Wis. 147.

GATES, Appellant, vs. PARMLY and others, Respondents.
SAME, Respondent, vs. SAME, Appellants.

| 113 | 147 |
| e114 | ⁸139 |
| 114 | ⁸140 |

*November 6, 1901—February 18, 1902.*

(1, 2) *Printed case: Briefs.* (3) *Contracts: Rescission: Equity: Practice: Motions, when too late.* (4–9) *Evidence: Findings: Appeal and error: Subsequent appeal: Exceptions: Mandate on reversal, what is compliance therewith: Interest: Prejudicial error.*

1. The printing of indorsements, file marks and admissions of service, concerning which no question is raised on appeal, violates Supreme Court Rule VIII, which requires appellant to print a complete abstract or abridgment of *so much* of the record *as may be necessary* to a full understanding of the questions presented for decision.

2. A brief containing many statements of alleged facts, contrary to the court's findings, without any reference to the record to substantiate them, and which from their nature could not have been in the record, and containing statements disrespectful to opposite counsel and abusive of parties, violates Supreme Court Rule XXVII, and will be ordered stricken from the files.

3. Plaintiff's application to the trial court for leave to rescind a land contract upon repaying the money he had received and to require the defendants to reconvey, made in an action brought to reform the contract and for other relief, comes too late, when no claim therefor was made until after the cause had been heard on appeal, followed by the completion of a trial before a referee.

4. Where conflicting testimony is ample to authorize the trial court in finding the aggregate value of a tract of land, as an entirety, at more than the value as found by a referee, the court's finding in that respect will be confirmed.

5. The original purchase price of land is a circumstance tending to show value, and is a proper item of evidence to be considered by the trial court.

6. Where a vendor, in a suit to reform an improvident land contract, obtained a judgment, and the supreme court on appeal therefrom directed an accounting and that when a final balance was struck he might have judgment *without interest*, such mandate governs the parties and all courts in any subsequent litigation.

7. A finding to which no exception has been made cannot be reviewed on appeal.

8. A vendor of lands sued to reform the contract, to collect the unpaid purchase price, and for other relief. On appeal the supreme court directed defendants to quitclaim back certain tracts, title to which was defective, and that plaintiff be charged with the value thereof. On a retrial, such lands having in the meanwhile been sold, defendants, in accordance with such mandate, tendered a quitclaim deed but failed to make full disclosures as to the facts relative to such sale. *Held*, that defendants having voluntarily disenabled themselves from performing such mandate, and having failed to make full disclosures so as to enable the court to adjust the equities thus arising, were not entitled to have the value of such lands deducted from the purchase price.

9. In such action where the items of credit to the plaintiff on which no interest was allowed substantially offset items of credit to defendants upon which interest was disallowed, and the trial court in its findings of fact allowed to defendants amounts paid for taxes, etc., on lands the title to which had failed, but without interest, because interest was not allowed plaintiff on the value of timber sold by defendants from the same lands, such offset of interest was a fair and equitable adjustment between the parties, and the failure of the court to carry such adjustment into the judgment is prejudicial error.

APPEALS from a judgment of the circuit court for Clark county: W. C. SILVERTHORN, Judge. *Modified and affirmed.*

This case came to this court in 1896, and may be found reported in 93 Wis. 294. The judgment was reversed, and the cause was remanded, with directions to take a reference as therein prescribed, and to ascertain the state of the account between the parties under the contract set out in the

complaint. The opinion determines certain of the claims made by defendants, and leaves to be ascertained what sum should be deducted from the amount due the plaintiff for failure of title to certain lands, a list of which accompanied the mandate. The facts of this litigation sufficiently appear in the former report. Upon the return of the record to the lower court a reference was granted, and a hearing had before a referee. Findings were made which were unsatisfactory to the plaintiff, and upon his application the case was re-referred, and further testimony taken. The result was that the referee increased the aggregate value of all the land from $39,107 to $40,947, leaving his other findings substantially as before. Exceptions to the findings were filed by plaintiff, and upon the hearing before the court the findings were modified to some extent, as herein noted.

The court's findings were, in effect, as follows: (1) The aggregate value of the entire tract of land was fixed at $45,000, instead of $40,947, as found by the referee. (2) The total value of the lands in the "Defective list," including ten forties known as the "Atlee lands," was $6,049, the same as found by the referee. (3) Of the whole value of the lands embraced in the suit, 13.4422 per cent. were defective in title, instead of 14.7727 per cent., found by the referee. (4) The deduction to be made from the $45,000 purchase price on account of defective titles was $6,049, instead of $6,647.72, as found by the referee, with interest for six years, amounting in all to $8,445.90, instead of $9,282.03, as stated in the referee's report. (5) On the trial before the referee the defendants tendered plaintiff a quitclaim deed of lands the title to which had been found defective, and covering the lands which should be so quitclaimed, pursuant to the directions of the supreme court in this cause. (6) Defendants selected S. E. S. E. 30—27—4 as the extra forty to make up the 800 acres mentioned in the former opinion. (7) De-

fendants had sold timber on certain of the lands ordered quitclaimed:

| | |
|---|---|
| Nov. 27, 1894, to McTaggart........................... | $ 60 |
| Dec. 27, 1895, to Prock............................... | 30 |
| July 9, 1892, to John & Steinert...................... | 568 |
| Dec. 1, 1895, to Bucher.............................. | 85 |
| Jan. 15, 1897, to Smith & Johnson.................... | 56 |
| Oct. 10, 1896, to Smith & Johnson.................... | 144 |
| Total ........................................ | $943 |

—(8) Expense of estimating lands from which timber was sold, mentioned in seventh finding, was $13.20. (9) Of the lands in the "Defective list," the "Atlee lands," and S. E. S. W. 34–25–2, and lot 7, 27–24–2, have been sold by the defendants; but the time when sold, and the amount received therefor, do not appear clearly in the evidence. (10) The title to seven forties (describing them) was perfected by defendants at an expense to them of $78.08. (11) That defendants paid taxes on lands to which title was defective amounting to $670.87 for principal, with interest "(amounting to $966.03, as stated in the referee's report)". (12) Defendants paid for tax-deed fees, etc., including interest to October 1, 1897, $34.39.

As conclusions of law the court found: (1) The plaintiff was entitled to recover the balance of unpaid purchase money for the lands, $22,500, without interest, and $187.37 redemption money received by the defendants for taxes on the "Atlee lands," reduced by the total amount of the several items found in favor of defendants. (2) Plaintiff was further entitled to the $943 received by defendants for timber sold, mentioned in the seventh finding, but without interest, as defendants were expending about an equal amount for taxes, as found in the eleventh finding. (3) That defendants were entitled to have credit for the value of the lands in the defective list, as stated in finding 2, amounting to $6,049, principal, and interest, $2,185.18,— in all, to $8,445.90. (Note. The figures

as to the amount of interest are wrong. The amount should
have been $2,396.90.) (4) Defendants were entitled to al-
lowance of $13.20 mentioned in eighth finding. (5) The
plaintiff was not entitled to anything upon the ninth finding,
for want of evidence. (6) Defendants were entitled to an
allowance of $78.08 as stated in the tenth finding, but with-
out interest, because of mutual expenditures mentioned. (7)
Defendants were entitled to the allowance of $679.87, with-
out interest, for taxes, etc., mentioned in finding 11. Interest
was not allowed on this item because no interest was allowed
on the amount due plaintiff mentioned in finding 2. (Note.
In the statement made by the court in conclusion 12, herein-
after referred to, this item was allowed at $966.03, which
includes interest amounting to $286.16.) (8) Defendants
are entitled to the allowance of $34.39 as mentioned in find-
ing 8. (9) Defendants are allowed, as directed by the su-
preme court, $5,080 on defect in titles under the 800-acre
clause in the contract, with $859.35, interest from November
1, 1890, to April 1, 1893, at seven per cent. (two years and
five months), and also $1,092.20, interest at six per cent. to
November 1, 1896 (or three years and seven months), being
interest for six years in all; total principal and interest be-
ing $7,031.55. (Note. The court evidently made a mistake
as to the time from which interest was to be computed. As
shown by the former decision, plaintiff was to have until
August 15, 1889, to make title to the land. Interest should
have been computed from that date to April 1, 1893, the time
the rate was changed by law, at seven per cent. for three
years seven and one-half months, and for two years four and
one-half months at six per cent., to make the full period of
six years. This makes a difference of $61.37 in favor of
defendants.) (10) The defendants are to be allowed, as di-
rected by the supreme court, $4,000 for timber sold by plaint-
iff to the Northwestern Lumber Company, together with
$676.65, interest from November 1, 1890, to April 1, 1893

(two years and five months), at seven per cent., and also $860 interest from April 1, 1893, to November 1, 1896 (three years and seven months), at six per cent., being interest in all for six years; principal and interest being $5,536.65. (11) Defendants should be allowed $206.93, as directed by the supreme court, paid to redeem lands from tax sale, without interest. (12) "That the computation upon which the amount of the judgment is made stands as follows:

"Credits Allowed Plaintiff.

| | | |
|---|---:|---:|
| Balance of purchase money.............................. | $22,500 | 00 |
| Allowance for amount received by defendants on the Atlee lands on settlement ................................. | 120 | 36 |
| Allowance for timber sold from lands on "Defective list" | 943 | 00 |
| | | |
| Total allowance to plaintiff......................... | $23,563 | 36 |
| For principal and int. allowed defts. on "Defective list".. | $8,445 | 90 |
| For item allowed defts. under fourth conclusion of law.... | 13 | 20 |
| For item allowed defts. under sixth conclusion of law.... | 78 | 08 |
| For item allowed defts. under seventh conclusion of law.. | 966 | 03 |
| For item allowed defts. under twelfth conclusion of law [should have been eighth]............................. | 34 | 39 |
| For item allowed defts. under ninth conclusion of law.... | 7,031 | 55 |
| For item allowed defts. under tenth conclusion of law.... | 5,536 | 65 |
| For item allowed defts. under eleventh conclusion of law.. | 206 | 93 |
| | | |
| Total allowance to defendants...................... | $22,312 | 73 |
| | | |
| Balance in favor of plaintiff....................... | $1,250 | 63" |

—(13) The quitclaim deed tendered by defendants was sufficient. (14) Plaintiff was entitled to judgment for the sum of $1,250.63, without interest, and without allowance of costs to either party, except that plaintiff was to pay the costs of reference.

The plaintiff filed exceptions to the first, second, fourth, and ninth findings of fact, and to all of the conclusions of law. The defendants excepted to the first, second, third, fourth, and seventh findings of fact, and to all of the conclusions of law, except the fourth, fifth, ninth, and thirteenth.

Prior to the making of the findings by the court the plaintiff made a motion to be permitted to rescind the contract involved in the suit, and that the defendants be required to reconvey all lands conveyed to them by the plaintiff. This motion was denied.

Judgment was entered as directed, and both parties have appealed.

*R. J. MacBride* and *Rublee A. Cole,* for the plaintiff.

*S. M. Marsh* and *L. M. Sturdevant,* for the defendants.

The following opinion was filed November 29, 1901:

BARDEEN, J.    1. We have been greatly embarrassed and our labors have been increased by the printing of a vast amount of irrelevant matter in the case. The printed matter covers nearly 500 pages, and contains at least 150 pages of rubbish that has no place in the printed case. The complaint, the findings on the former trial and exceptions thereto, the opinion of the trial court, the first judgment, and many other papers are set out at length. Counsel have, with great industry and fidelity, printed the indorsements, file marks, and admissions of service on the back of each paper, although no question has been raised with reference thereto. They serve no purpose but to incumber the record and weary the court. Rule VIII requires the appellant to print a complete abstract or abridgment of *so much* of the record *"as may be necessary* to a full understanding of the questions presented for decision." This case furnishes a most flagrant violation of that rule.

2. Upon the argument the plaintiff asked leave to file a brief prepared by himself, the better to aid the court to a solution of the questions of fact presented. We then directed that it might be filed with the clerk, subject to future inspection. We find that it in no way conforms to the rules. It contains many statements of alleged fact contrary to the court's findings, without any reference to the record to sub-

stantiate them, and which, from their very nature, could not have been therein. But, worst of all, it contains many statements disrespectful to opposite counsel and abusive of defendants. The latter are charged with producing and using false testimony. The attorneys are accused of "juggling with the abstracts" and keeping them from the attention of the court, and using others which showed defective titles. One of the attorneys, a most honored member of this bar, is said to have been allowed to "swipe four forties for practically nothing as a consideration," and another is charged with "sliding in descriptions or sliding them out" while his associate was arguing the case. Charges of this kind cannot be tolerated. They are contrary to Rule XXVII, and the clerk is directed to strike the brief from the files.

3. Prior to the filing of findings by the trial court, but after the completion of the hearing by the referee, the plaintiff made a motion to be allowed to rescind the contract in suit upon repaying the money he had received, and requiring the defendants to reconvey the lands conveyed to them thereunder. The court denied the motion, and, except for the fact that it is argued with some seriousness in the brief of Mr. Cole that this ruling was erroneous, we should pass it without comment. On the former hearing this court said:

"The defendants cannot now be allowed to rescind the contract. They made no case in their answer and no claim in it for rescission."

On the motion for the rehearing the defendants urged a rescission of the contract, and were then anxious to secure it. After a trial before the referee, and the lapse of time, the position of the parties has become reversed. The plaintiff is the one now seeking a rescission. No more appropriate answer can be made to him than was given the defendants. He made no claim for a rescission in his complaint, and cannot now be heard to urge claims for relief on that ground. The situation of the parties and the conditions surrounding

them have entirely changed. The application for such relief
came entirely too late.

4. Under the former decision in this court, the only mat-
ter left open was to ascertain the relative value of which the
lands in the so-called "Defective list," to which title had
failed, bore to the value of the entire tract conveyed, and to
make an accounting of the matters properly growing out of
the same. Pursuant to the suggestion therein made, the lower
court granted a reference, at which both parties appeared and
offered testimony. The referee made findings which were
unsatisfactory to plaintiff. He made application for and
obtained an order opening the case for further testimony.
The referee adhered to his first findings, except that he in-
creased the aggregate value of the entire tract of land some
$1,840, the new valuation being placed at $40,947. Upon
review of his findings by the court, certain modifications of
the referee's findings were made as noted in the statement;
the most important being an increase in the referee's valua-
tion above mentioned to $45,000, which was equivalent to the
original purchase price of the land. Both parties complain
of this change. The plaintiff insists the value should have
been increased to at least $60,000, while the defendants claim
there is no warrant in the testimony for changing the figures
of the referee. The controversy arises chiefly over the values
that ought to be placed upon about 184 forties of land which
two of defendants' witnesses, who had made a personal exam-
ination, classed as worthless. On the first hearing the referee
apparently considered them as valueless. On the second hear-
ing he valued them at $10 per forty, which accounts for the
changes in his figures. As near as we can make out from the
rather haphazard condition of the testimony, several witnesses
for plaintiff put the value of these lands at from fifty cents to
as high as $2.50 per acre. It is a matter of great difficulty to
sift out and apply the testimony to any given forty and we
are given very little assistance in the briefs of counsel. The

referee seems to have felt bound by the Huntly estimate as to condition and value. There was, however, quite a volume of testimony, somewhat general in its nature, placing values considerably in excess of the figures on this estimate. The original purchase price of the land was a circumstance tending to show values, and was proper to be considered. Without going into particulars, we think there was ample testimony to authorize the court in increasing the aggregate value of the entire tract to at least the figure fixed by him. We are not convinced that such value should be increased, and therefore confirm the finding in this respect.

5. The plaintiff now claims that he should have been allowed interest on the amount found his due from the date of the filing of the former mandate in this action. The plaintiff came into a court of equity for relief, when he had none at law. He had made an imprudent contract, and admitted in his complaint that he had not completed his contract "to its fullest extent." He had stipulated in his contract that the balance of the purchase price of the land should not bear interest until he had furnished an abstract showing title as required thereby. The title to a large number of tracts had failed, and performance on his part was practically impossible. In a court of law he had no remedy. He could not have collected a dollar of the purchase price unpaid. He sought the intervention of a court of equity, and on the former hearing it was said that when a final balance was struck he might have judgment *without interest*. We cannot now revise that judgment. As it was there announced, so must it stand. That fiat must govern the parties and this court in all matters involved in this and any subsequent litigation.

6. The plaintiff attacks the value placed by the referee and court on the lands included in the so-called "Defective list," the title to which failed. We see no reason for disturbing the conclusion reached by them, except in the particulars hereinafter mentioned. The ten forties known as the "Atlee

lands" were disposed of by the former opinion. The only thing the lower court had to do was to ascertain their value. While it was said that the defendants should quitclaim to plaintiff the lands in the defective list, yet that must be considered in connection with what was said by the court with relation to these very lands. In 93 Wis. 319, it is said:

"Atlee brought an action to recover the lands, and it was compromised by Parmly, trustee, quitclaiming the lands to him for $184.37, while acting in good faith on the theory, 'induced by the plaintiff's conduct, that the title was bad."

The defendants were to be charged with $184.37 they received, less $64.01 of redemption money drawn and retained by the plaintiff. The theory upon which plaintiff was to be charged with the value of these lands was that they were an essential part of the entire tract, the title to which failed; the quitclaim by defendants having been induced by the plaintiff's conduct, and given in compromise of the pending suit. In view of what was said in the former opinion, we cannot believe that it was intended that defendants were to go through the empty ceremony of quitclaiming these lands to plaintiff, when they had been induced by him to part with whatever interest they had to the original owner. There is, however, another matter in this connection which seems to have been overlooked. As already stated, the former mandate required the defendants to quitclaim to plaintiff the lands in the defective list. The quitclaim as to the "Atlee lands" has already been disposed of. As to the other lands, the court finds by the fifth finding that such requirement has been fulfilled. That finding has not been excepted to by the plaintiff, and cannot be reviewed. It must stand as a verity. But in finding 9 the court declares that the S. E. S. W. 34— 25—2 and lot 7, 27—24—2 had been sold by defendants; but the time when, or the amount received therefor, was not clearly shown by the evidence. Both of these tracts were included in the list of defective titles; the former being

valued at $120, and the latter at $488. To get equity, the defendants were bound to do equity. The claim to very many of these lands was based upon tax titles. The requirement to reconvey by quitclaim was undoubtedly based upon the idea that some interest, more or less valuable, had been passed by the original deed. Whatever that was, the plaintiff was entitled to it when allowance was made for the value of the lands in deduction from the original purchase price. If defendants had sold these lands, or any parts of them, and had put it beyond their power to comply with the mandate of the court, it was their duty to make full discovery of the facts, so that the court could adjust the equities on some other basis. This they failed to do, and yet they were given the full value of these lands, as stated, with six years' interest. Having sold the interest they were required to reconvey in the two tracts mentioned, and having failed to advise the court of the profit realized, they are in no position now to exact the full "pound of flesh" from their adversary. By the judgment of the court they get not only the original value of the land deducted from the amount they were to pay, but also whatever they received from the sale. Having voluntarily disenabled themselves from performing the court's mandate, and having failed to make full disclosure with reference thereto, we do not think they should be allowed to include the value of these parcels in the defective list. The value of the lands in the defective list should therefor be but $5,441, instead of $6,049. This item of the account would stand as follows, computing interest at seven per cent. for three years and seven and one-half months, and at six per cent. for two years, four and one-half months:

Principal ........................................ $5,441 00
Interest at seven per cent........................ 1,380 66
Interest at six per cent.......................... 775 32

Total ........................................ $7,596 98

—making a difference in favor of plaintiff of $848.92.

7. Under the terms of the contract as construed in the former decision (93 Wis. 317), the defendants were entitled to deductions on account of defective title to 800 acres mentioned in the contract, in addition to the lands above mentioned, of the value of $5,080. In the ninth conclusion of law the court allowed this item, but commenced his computation of interest from November 1, 1890, when the date should have been August 15, 1889, the time when plaintiff was under contract to furnish title. The interest should have been allowed for a period of six years,—three years seven and one-half months at seven per cent., and two years four and one-half months at six per cent. This makes a difference of $61.37 in favor of defendants. The principal and interest should have been $7,092.92, instead of $7,031.55.

8. In the eleventh finding of fact the court finds that defendants had paid $679.87 for taxes, etc., on lands the title to which had failed, which, with interest, amounted to $966.03. In the seventh conclusion of law he says the sum first mentioned should be allowed without interest, because interest was not allowed plaintiff on the value of the timber sold by defendants on these same lands; yet when he comes to make up his statement for judgment, in conclusion 12, he allows the item at $966.03, which includes $286.16, interest to the date of the referee's first report. The idea of the court seems to have first been that, as there were items of credit to plaintiff amounting to $1,063.36 upon which no interest was allowed, and items of credit to defendants amounting to $1,012.47 upon which he disallowed interest, it would be a fair offset. Had he carried this conclusion into the judgment, there would have been no reasonable ground for complaint. As to these items, one party was as justly entitled to interest as the other, and the offset of one against the other was, as the court said, "a fair and equitable adjustment" between the parties. His failure to carry this ad-

justment into the judgment resulted to the prejudice of the plaintiff in the amount of $286.16.

9. The former opinion held that defendant should be allowed credit for $4,000 for timber cut from the lands conveyed by the Northwestern Lumber Company, with interest from the time the last sum was paid plaintiff by the company. In conclusion 10 the court allowed interest for six years from November 1, 1890. The defendants insist that such allowance of interest should have been to the date of the findings. The writer of this opinion believes the trial court's view was right, but the other members of the court are of opinion that a proper construction of the former decision requires the adoption of the defendants' contention. This necessitates a modification of the allowance as follows:

| | | |
|---|---:|---:|
| Principal sum | $4,000 | 00 |
| Interest from November 1, 1890, to April 1, 1893, two years and five months, at seven per cent.. | 676 | 65 |
| Interest from April 1, 1893, to November 23, 1900, seven years, seven months, twenty-two days, at six per cent | 1,834 | 65 |
| Total | $6,511 | 30 |
| Amount allowed by the court | 5,536 | 65 |
| Difference in favor of defendants | $974 | 65 |

10. The court directed the entry of judgment for plaintiff without costs to either party, except that plaintiff was to pay the costs of the reference. We confirm that conclusion, without comment. There are other contentions in the case, but we do not regard them of sufficient importance to require discussion. In so far as they attack the conclusion of the court below, they must be considered overruled.

11. The views hereinbefore expressed necessitate a slight modification of the judgment. The total credits herein found for plaintiff are $1,135.08. Defendants' credits are $1,036.02, making a net balance in favor of plaintiff of $99.06. The judgment will be modified by adding the

Chicago, St. P., M. & O. R. Co. v. C., M. & St. P. R. Co. 113 Wis. 161.

amount to the plaintiff's recovery as of the date. when entered.

*By the Court.*—The judgment is modified as directed in the opinion, and as so modified is affirmed. No costs are allowed, except that the defendants must pay the fees of the clerk of this court, and for 100 pages of the printed case.

Both parties moved for a rehearing.

For the plaintiff there was a brief by *Rublee A. Cole,* and for the defendants there was a brief by *S. M. Marsh* and *L. M. Sturdevant.*

On February 18, 1902, the plaintiff's motion was deemed waived, and the defendants' motion denied.